GIANT EAGLE, INC., Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (THOMAS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 7, 1998.

Decided March 5, 1999.

**874**

Sylvester A. Beozzo, Pittsburgh, for petitioner.

John T. Hofrichter, Washington, for respondent.

Before COLINS, President Judge, DOYLE, J., SMITH, J., FRIEDMAN, J., KELLEY, J., FLAHERTY, J., and LEADBETTER, J.

DOYLE, Judge.

Giant Eagle, Inc. (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ) to grant the claim petition of Mary Thomas (Claimant).

Claimant begin working part-time as a baker-in-training for Employer in May of 1992, at which time Claimant suffered from a pre-existing asthma condition which she was treating with the medications Seldane, Proventil and Atrovent. On June 13, 1992, Claimant developed a rash on her neck, face and arms and a mild shortness of breath while working her regularly scheduled shift. Claimant sought medical attention as an outpatient at South Side Hospital, and her symptoms subsided within three days of the episode.[1] A company dermatologist referred Claimant to an allergist, who then treated Claimant through October 1992. Prior to June 13, 1992, Claimant had never experienced a similar episode as she did on that date, despite having previously worked as a baker, nor has she experienced a similar medical problem since that time.

On September 29, 1992, Claimant filed a claim petition for workers' compensation benefits alleging that, on June 13, 1992, she suffered a disabling work-related injury described as "Rash—welts on forearms; slight breathing; slight redness on throat area." Employer filed an answer denying the material allegations of the claim, and hearings were held before a WCJ.

In support of her petition, Claimant testified on her own behalf, and the WCJ made the following findings of fact relevant to her testimony:

(a) Claimant began working as a baker-in-training for [Employer] approximately one month prior to June 13, 1992.

(b) At the time of her hire, [C]laimant suffered from asthma, and was being treated with three different medications, Seldane, Proventil, and Atrovent.

(c) At [E]mployer's workplace, [C]laimant was exposed to, inter alia, flour and baker's yeast.

(d) On June 13, 1992, [C]laimant suddenly developed a rash on her face, neck, and arms, accompanied with mild shortness of breath, while in the third hour of her regularly scheduled shift in the bakery department. Claimant immediately sought treatment at South Side Hospital, where she was prescribed Benadryl and Topicort, and advised to not return to work.

(e) Claimant's symptoms abated within three days of the alleged injury date.

(f) Claimant subsequently sought treatment, at [Employer's] suggestion, with Dr. Rebecca Caserio, a dermatologist, who referred her to Dr. Richard L. Green, an allergist. Dr. Green treated [C]laimant from July through October of 1992. According to [C]laimant, neither Dr. Green nor any other physician ever released her to return to work.

(g) Claimant has never experienced, before or after June 13, 1992, an attack similar to that which she sustained on

1. Claimant never returned to work for Employer after June 13, 1992. Claimant took a part-time job with another employer, at wages equal to or greater than her pre-injury wages, from May 10,

1993 until September 10, 1993. In September of 1993, Claimant began attending Connelly Vocational School on a full-time basis, taking courses in Central Service Technician training.

that date, despite having previously worked as a baker.

(h) Following the June 13, 1992 episode, [C]laimant continued to take Seldane, Proventil, and Atrovent without incident.

(WCJ's Decision at 2–3; Reproduced Record (R.R.) at 7a – 8a.)

Claimant also presented the narrative reports dated July 9, 1992, August 28, 1992, and September 16, 1992, from her allergist, Dr. Richard Green. Dr. Green's July report indicated that he had suggested that Claimant undergo a complete allergy survey. After completing such a survey, Dr. Green found that Claimant tested positive for allergies to house dust, molds, feathers, late pollinating trees and ragweed, but exhibited minimal reactivity to baker's yeast. Although Dr. Green was unable to identify the specific allergen responsible for Claimant's episode of June 13, 1992, his reports indicated that Claimant's symptoms could have been caused by a "number of factors," including:

a hot and humid work environment, the possibility of yeast allergy as indicated by her positive skin test to mold, and an irritant effect of flour. Because the welts on her arms were present on areas that contacted the metal trays, this may represent an element of contact allergy as well.

(R.R at 80a.) Dr. Green stated in his report of July 9, 1992, that the June 13, 1992 episode was "probably due to an ingredient in the baking preparation." (WCJ's Finding of Fact 5(d); R.R. at 8a.) Dr. Green concluded that Claimant has an underlying allergic condition that is easily irritated by working in an environment containing airborne particles such as flour dust and that she should limit her exposure to such environments.

Employer responded by presenting the emergency room treatment records from South Side Hospital, dated June 13, 1992, indicating that Claimant complained of a rash on her chest and arms and that she had difficulty breathing. The hospital records also revealed that Claimant informed the attending physician that she worked as a baker, and she had been handling citrus fruit at work that evening. The follow-up instructions given to Claimant by the Hospital advised Claimant to avoid handling citrus fruit.

Employer also presented the deposition testimony of Andy Jacco, also employed by Employer as a baker. Jacco worked at the same facility as Claimant, and, although Jacco did not work during Claimant's shift on the evening of June 13, 1992, he testified that he had witnessed Claimant wearing a dust mask on previous occasions and that Claimant informed him that she was taking precautions against aggravating her preexisting allergy condition.

Based upon the evidence presented, the WCJ determined that Claimant met her burden by proving that she "became totally disabled as a result of the skin rash and the shortness of breath" she experienced on June 13, 1992, and that "these symptoms were caused by exposure to her work environment." (R.R. at 9a.) The WCJ determined, therefore, that Claimant was entitled to benefits from the date of her injury until May 10, 1993,[2] the date on which she obtained alternative employment that did not subject her to the allergens which aggravated her preexisting condition. Employer appealed to the Board, which affirmed the decision of the WCJ. The Board's decision was based on the fact that, if Claimant did return to her previous job with Employer, she would likely suffer a recurrence of her injury; thus, Claimant remained totally disabled until she found alternative employment:

Since the [WCJ] found that Claimant's injury was a result of exposure to the elements of her work environment, it stands

2. The date on which Claimant obtained alternative employment was a subject in question in the record. At the first hearing, held on November 4, 1993, Claimant represented that she started a new job as of August 26, 1993, but after further questioning, she testified that she began working part-time on April 26, 1993. At the second hearing held on July 20, 1994, Claimant's attorney presented pay stubs to show that Claimant's first day of work at her subsequent employer was May 10, 1993. (R.R. at 63a.) Claimant's counsel then moved to amend Claimant's claim petition for temporary partial disability for the closed period June 13, 1992 to May 10, 1993 only. (R.R. at 62a – 67a.) Since this period was less than 52 weeks, Claimant was able to introduce the medical reports of her doctors rather than having to depose them. See Section 422(c) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 835.

to reason that Claimant would remain disabled until she found alternative employment which would not cause her to suffer from allergic reactions.

(Board's Decision at 3; R.R. at 19a.)

On appeal to this Court,[3] Employer argues that the record does not contain substantial evidence to support the WCJ's grant of benefits because Claimant failed to present unequivocal medical testimony establishing that the skin rash and breathing difficulty which she experienced on June 13, 1992, were related to her employment. Alternatively, Employer argues that, even if the WCJ was correct in finding that Claimant was totally disabled due to a work-related injury, the evidence shows that Claimant recovered from her "disability" as of September 16, 1992,[4] and thus, Employer would owe benefits only until that date and not May 10, 1993, when Claimant found alternative employment. Therefore, Employer contends that the WCJ erred in holding Employer responsible for benefits from the date of injury through May 10, 1993.

■ In a workers' compensation claim petition proceeding, the claimant has the burden of establishing the right to compensation and all of the elements necessary to support an award, *i.e.*, an injury sustained in the course of employment and related thereto. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). As a part of this burden, the claimant must establish a causal connection between the disability and the work-related incident. *Id.* What is required to establish this causal connection is dependent upon whether or not the injury is obviously work-related. An obvious injury is one that immediately manifests itself while a claimant is in the act of doing the kind of work which can cause such an injury. *Calcara v. Workers' Compensation Appeal Board (St. Joseph Hospital)*, 706 A.2d 1286 (Pa.Cmwlth.1998).

A classic example would be the laborer who grabs his back in pain after lifting his shovel full of wet concrete. In such a case, the causal connection is so clear that a lay person can see the connection. *Id.* Under such circumstances, the claimant's testimony is sufficient to connect the injury to the claimant's employment, and additional medical testimony is not required. *Id.*

■ Conversely, where there is no obvious causal connection between an injury and the claimant's employment, the claimant must establish that connection by unequivocal medical testimony. *Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800 (1985). Whether medical testimony is unequivocal is a conclusion of law, fully reviewable by this Court; to make this determination, we must examine the testimony as a whole, recognizing that a final decision should not rest on a few words taken out of context. "[I]t is not absolutely essential that the expert say 'that it is my professional opinion' and it is sufficient for the expert to say 'I think' or 'I believe' as the assertion of his opinion." *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa.Cmwlth. 202, 465 A.2d 132, 134 (1983). Accordingly, the claimant in this case *has* produced competent evidence of the facts even if her medical witness admits to uncertainty, reservation, doubt or lack of information with respect to medical and scientific details. *Id.* 465 A.2d at 135.

■ Here, we find that Claimant's injury was obviously work-related. The evidence established that Claimant had never experienced a similar episode prior to June 13, 1992, and that she has not experienced a similar medical problem since leaving Employer's place of business. Furthermore, Dr. Green's July report stated that Claimant's allergic episode at work was "probably due to an ingredient in the baking preparation."

---

3. Our standard of review in workers' compensation decisions is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. *Berks County Home v. Workmen's Compensation Appeal Board (Schnable)*, 145 Pa. Cmwlth. 582, 604 A.2d 767 (1992).

4. September 16, 1992 was the date of Dr. Green's third medical report after receiving the results of the allergy skin testing done on Claimant.

(R.R. at 78a.) Because we find that Claimant's injury was obviously work-related, Claimant did not need to prove the causal relationship between her allergic episode and her employment with additional unequivocal medical testimony. However, although we need not address Employer's argument that Dr. Green's opinion is equivocal, we note that, even if we were to find that Claimant's injury was not obviously related to her employment, we would conclude, after reviewing Dr. Green's reports, that his medical opinion is unequivocal under the standard set forth in *Lucas*.[5]

We now address Employer's alternative argument that there is not substantial evidence to support the WCJ's finding that Claimant was disabled until May 10, 1993, the date Claimant returned to work. Employer contends that, because Dr. Green's narrative report of September 16, 1992, does not indicate that Claimant had any residual disability, Claimant's disability ceased as of that date, and Claimant is entitled to benefits only from June 13, 1992 through September 16, 1992. Although we agree with Employer's alternative argument on these grounds, there is an equally important reason why Claimant's benefits should be truncated.

Our Supreme Court's recent holding in *Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board (Baxter)*, 550 Pa. 658, 708 A.2d 801 (1998), addresses an issue almost identical to the one presented in this case. The Court in *Baxter* held that a claimant was not entitled to receive compensation benefits for a preexisting non-work-related asthmatic condition when the claimant had fully recovered from the work-related aggravation of that condition, which resulted in the work-related injury. The holding in *Baxter* was based upon the fact that the claimant's work with his employer did not **cause** the condition, but merely **aggravated** his preexisting asthmatic condition, present since childhood.

In *Baxter*, the claimant was employed by Bethlehem Steel as a welder and had suffered from asthma since childhood. As a welder, he was exposed to paint fumes and

was disabled because the fumes aggravated his asthmatic condition. Bethlehem Steel paid for Baxter's period of disability, and Baxter's lung functions returned to normal after August 22, 1991; however, Baxter did not return to work based upon his physician's recommendation that, if he did so, he would again most certainly become disabled because of the inhalation of the paint fumes. A WCJ granted continuing total disability benefits and the Board and this Court affirmed that decision, based upon our understanding of our Supreme Court's decisions in *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass Works)*, 515 Pa. 315, 528 A.2d 580 (1987), *Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Company)*, 514 Pa. 450, 525 A.2d 1204 (1987), and *Lash v. Workmen's Compensation Appeal Board (General Battery Corp.)*, 491 Pa. 294, 420 A.2d 1325 (1980). However, our Supreme Court reversed, holding:

> It undermines the principles of the [Workers' Compensation] Act to impose liability on an employer for the existence of a condition present from childhood when no residual work-related injury is demonstrated. Baxter was properly paid worker's compensation benefits for the period of time he was disabled by conditions at his workplace, as those conditions exacerbated his pre-existing condition, but once he had fully recovered from that disability, he was ineligible for benefits.

*Baxter*, 550 Pa. at 664–65, 708 A.2d at 804.

Similarly, Claimant in the present case suffers from asthma, which, she admitted, existed prior to the time that she started working for Employer. Claimant's work with Employer did not **cause** the condition, but merely **aggravated** Claimant's **preexisting** asthmatic condition. Claimant had fully recovered from the **aggravation**, and, therefore, the work-related injury, after leaving the workplace; thus, she is not entitled to any benefits under the reasoning of *Baxter*.

■ Although Claimant in this case might have suffered a recurrence of her disability if she returned to work for Employer, she is

5. In this respect we are fully in accord with the reasons given by Judge Friedman in her concurring and dissenting opinion to reach the same conclusion.

not entitled to benefits under the holding of *Baxter* because she did not experience any residual physical injuries **caused** by her employment once she left the workplace. Therefore, the WCJ's decision to grant benefits from June 13, 1992 through May 10, 1993 was in error. We observe in passing that at the time the Board's decision was made (October 23, 1997) and, of course, at the time the WCJ's decision was circulated (June 19, 1995), the Supreme Court's opinion in *Baxter* had not been filed. *Baxter* was not filed until March 9, 1998, and appropriately, Employer now argues *Baxter* to us in this present appeal.

We note that a claimant such as the Claimant in this case would not ordinarily be entitled to receive any award of benefits from June 13, 1992 to June 16, 1992, a period of three days only. However, that issue is not before this Court.[6] Employer, in its alternative argument, asks us only to modify the benefits and shorten the fixed period from May 10, 1993 to September 16, 1992. Accordingly, the order of the Board affirming the decision of the WCJ is modified to grant Claimant benefits from June 13, 1992 through September 16, 1992 only.

Reversed in part and affirmed in part.

### ORDER

NOW, March 5, 1999, the decision of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed in part, and reversed and modified in part, and the order of the Workers' Compensation Judge is modified to grant Employer Giant Eagle, Inc. a termination as of September 16, 1992, and grant Claimant benefits from the period of June 13, 1992 until September 16, 1992.

---

FRIEDMAN, Judge, concurring and dissenting.

I concur with the majority's determination that a causal connection existed between Mary Thomas' (Claimant) employment and the aggravation of her pre-existing asthmatic condition; however, unlike the majority, I would not find that Claimant's injury was obviously work-related. Rather, I agree with Judge Kelley's dissent that this type of injury involves too many intangibles for us to recognize such an obvious relationship. Thus, I too would require Claimant to prove a causal relationship between her allergic episode and her work by means of unequivocal medical evidence. However, contrary to the position taken by Giant Eagle, Inc. (Employer) and Judge Kelley, I believe that Claimant has succeeded in this proof.

In support of her claim petition, Claimant testified on her own behalf and presented the narrative reports of Richard L. Green, M.D.[1]

---

**6.** Under Section 306(e) of the Workers' Compensation Act, no compensation shall be allowed for the first seven days after disability begins unless the disability lasts 14 days or more. 77 P.S. § 514. Claimant in this case completely recovered from the work-related injury within three days after leaving the workplace, and thus within the seven-day waiting period prescribed by Section 306(e); therefore, Claimant ordinarily would not be entitled to collect loss of earning benefits, even for the three day period from June 13, 1992 to June 16, 1992. Claimant would, of course, still be entitled to reimbursement for medical expenses incurred as a result of the June 13, 1992 episode. Nevertheless, Employer failed to raise a Section 306(e) argument before either the WCJ or the Board and did not raise the issue before this Court. Employer asks only that this Court modify the WCJ's order so as to grant benefits from the period of June 13, 1992 through September 16, 1992, instead of through May 10, 1993, and to that extent we will grant the relief requested.

**1.** Initially, Employer objected to the offer of Dr. Green's narrative reports on the basis of hearsay; however, the reports were ultimately admitted without objection after the parties stipulated that the period of Claimant's disability was less than 52 weeks. *See* Section 422 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 835.

Dr. Green's narrative report of July 9, 1992 provides, in relevant part:

Because of [Claimant's] other allergic symptoms, in addition to her rash occurring at work, it was recommended that she undergo [a] complete allergy survey. She was tested by the scratch puncture technique.... Those tests were negative. She was to have been scheduled for subsequent testing to additional pollens, inhalants and foods. She was advised to continue with her Proventil and Atrovent Inhalers and Seldane tablets.

It was my impression that [Claimant] is an allergic individual with respiratory allergies as well as dermatologic allergies that flared at

Dr. Green's reports indicated that he began treating Claimant on July 1, 1992, and, after reviewing Claimant's medical history and prior treatment, Dr. Green suggested that Claimant undergo a complete allergy survey. (WCJ's Findings of Fact, No. 5(a).) Dr. Green found that Claimant tested positive for an allergy to molds and exhibited minimal reactivity to baker's yeast. (WCJ's Findings of Fact, No. 5(b).) Although he was unable to identify the specific allergen responsible for Claimant's acute episode of June 13, 1992, Dr. Green opined that a multitude of factors, including a hot and humid work environment, Claimant's possible yeast allergy and the irritant effect of flour, caused her symptoms. (WCJ's Findings of Fact, No. 5(c).) Dr. Green stated that Claimant's June 13, 1992 episode was "probably due to an ingredient in the baking preparation," and he concluded that "[C]laimant has an underlying condition that is easily irritated by working in an environment characterized by hot and humid conditions, airborne chemicals, or airborne particulates such as flour dust." (WCJ's Findings of Fact, Nos. 5(d) and 5(e).) Accordingly, Dr. Green recommended that Claimant limit her exposure to such environments and that she seek other employment. (WCJ's Findings of Fact, No. 5(e); R.R. at 80a.)

The WCJ accepted Dr. Green's narrative reports as credible and stated that "Dr. Green's reports *read as a whole* unequivocally establish that [C]laimant's rash was caused by her work environment and that she was disabled from working in that environment."

(WCJ's Findings of Fact, No. 10) (emphasis added.) I would agree.

In arguing that Dr. Green's medical opinion was equivocal with regard to the work-relatedness of Claimant's injuries, Employer points to a portion of Dr. Green's July 9, 1992 report in which Dr. Green states that Claimant had the allergic episode at work *"probably* due to an ingredient in the baking preparation." (R.R. at 78a) (emphasis added). However, I believe that Dr. Green's use of the term "probably," taken in context, does not necessarily render his opinion equivocal. While I recognize that Dr. Green's narrative reports are replete with terms that appear equivocal, a careful reading of the reports reveals that all terms of equivocality go to Dr. Green's inability to specifically identify which allergen *at work* caused Claimant's allergies to "flare."[2] However, all of the "possibilities" to which Dr. Green refers as likely causes for Claimant's June 13, 1992 incident were present in Claimant's work environment; more than once, without equivocation, Dr. Green expressed the opinion that Claimant's allergic reaction was caused by something at work. Thus, like the WCJ, I would conclude that, when taken as a whole, Dr. Green's narrative reports unequivocally related Claimant's rash and breathing difficulty to her work environment. (*See* WCJ's Findings of Fact, No. 10.)

With respect to Employer's alternative argument, I must respectfully dissent from the majority's determination that Claimant's entitlement to benefits should end before May 10, 1993, the date Claimant obtained alter-

work probably due to an ingredient in the baking preparation. It was felt that she would benefit from a complete allergy investigation. (R.R. at 78a.)

Dr. Green's follow-up narrative report of September 16, 1992 provides, in relevant part:

It is my impression that [Claimant] is an allergic individual.... I was unable to pinpoint the *specific allergen involved in producing the re-action of June* [13], 1992. However, [Claimant] felt that she was more allergic that entire week at work because of an increase in runny nose and sore throats, and nosebleeds. She also had some chest congestion that night of June [13] after being at work. A number of factors could have contributed to those symptoms including a hot and humid work environment, the possibility of yeast allergy as indicated by her positive skin test to mold, and an

irritant effect of flour. Because the welts on her arms were present on areas that contacted the metal trays, this may represent an element of contact allergy as well.

It is felt that [Claimant] is an underlying allergic individual who will be easily irritated by working in a hot, humid environment. She also will be more easily irritated by airborne chemicals and particulates such as flour dust. I suggested that she try to obtain employment in a more controlled environment that would limit such exposures.

(R.R. at 80a.)

2. Dr. Green indicated that Claimant's reaction could have been caused by the hot and humid work environment, or by Claimant's yeast allergy, or by the irritant effect of flour or by Claimant's contact with the metal baking trays.

nate employment that did not subject her to the allergens that previously aggravated her condition. I recognize that, under *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993), the claimant has the burden to establish the duration of disability; however, I believe that Claimant has met that burden where, as here, Claimant's return to work at Employer's workplace would likely cause her to suffer a recurrence of her injury. *Fink v. Workmen's Compensation Appeal Board (Walbridge Corporation)*, 678 A.2d 853 (Pa. Cmwlth.1996); *Cox v. Workmen's Compensation Appeal Board (Brookville Glove Manufacturing)*, 144 Pa.Cmwlth. 147, 601 A.2d 404 (1991); *see also Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Company)*, 514 Pa. 450, 525 A.2d 1204 (1987).

Although our supreme court in *Bethlehem Steel Corporation v. Workmen's Compensation Appeal Board (Baxter)*, 550 Pa. 658, 708 A.2d 801 (1998), held that a claimant was not entitled to receive compensation benefits after recovering from an aggravation of a pre-existing non-work related asthmatic condition, the court did not expressly overrule the general longstanding principle and holding of *Fink, Cox* and *Pawlosky* and, thus, I would apply those decisions here. Further, to the extent that *Baxter* overrules those cases by implication, I believe that *Baxter* was incorrectly decided based on the dissenting opinion of Justices Cappy and Nigro. Therefore, like the WCJ, I believe that May 10, 1993 is the proper date to terminate Claimant's benefits.

Accordingly, I would affirm the order of the WCAB without modification.

KELLEY, Judge, dissenting.

I respectfully object to the majority's legal conclusion that claimant's aggravation of her preexisting asthmatic condition is obviously work-related. Initially, I believe that the evidence upon which the majority relies in making this determination is clearly susceptible to contrary interpretation. Simply because claimant never experienced an allergic reaction at work prior to or after the June 13, 1992 incident does not mean that an obvious causal relationship exists between the workplace and the aggravation of claimant's preexisting asthmatic condition. This proposition is supported by the fact that claimant worked in the same environment for a month prior to the June 13, 1992 episode without experiencing an allergic reaction.

Furthermore, other than testifying that she experienced an allergic reaction at work, claimant failed to present any competent evidence causally relating the reaction to the workplace. Claimant does not know which specific allergen causes her to have a reaction or whether the allergen existed in the work environment. Thus, any testimony claimant could offer regarding her allergies would be a medical conclusion which claimant is not qualified to give. Consequently, I am perplexed as to how claimant's allergic reaction can be legally described as "obviously work-related." Are we to assume that all allergic reactions are immediate? Are we always to assume an allergic reaction which occurs at work is due to an allergen in the workplace, as opposed to something a claimant consumes such as food or medication? There are simply too many intangibles involved with this type of injury for this court to conclude that claimant's injury is obviously related to an allergen in the work place.

Based on my review of cases involving the aggravation of a preexisting asthmatic condition or preexisting obstructive lung disease, this court has consistently required a claimant to present unequivocal medical testimony in order to establish the requisite connection between the workplace and the aggravation of the preexisting condition.[1] *Vazquez v.*

---

1. The majority of cases which have concluded that claimant's disability is obviously work-related involve claimants who contemporaneously experience pain while lifting an object or being struck by an object. *See Dana Corp. v. Workmen's Compensation Appeal Board (Hollywood)*, 706 A.2d 396 (Pa.Cmwlth.1998) (obvious causal connection when claimant is struck in the right knee by steel bar measuring ten inches wide by fifteen feet long); *Davis v. Workmen's Compensation Appeal Board (United Parcel Service)*, 92 Pa. Cmwlth. 294, 499 A.2d 703 (1985) (obvious causal connection present when claimant's back injury immediately manifested itself after claimant engaged in heavy lifting); *Sacks v. Workmen's Compensation Appeal Board*, 43 Pa.Cmwlth. 259,

*Workmen's Compensation Appeal Board (Masonite Corporation)*, 687 A.2d 66 (Pa. Cmwlth.1996), *petition for allowance of appeal denied,* —— Pa. ——, 724 A.2d 350 (1998); *Fink v. Workmen's Compensation Appeal Board (Walbridge Corporation)*, 678 A.2d 853 (Pa.Cmwlth.1996), *reversed on other grounds,* 551 Pa. 432, 710 A.2d 1139 (1998); *Knapp v. Workmen's Compensation Appeal Board (GTE)*, 671 A.2d 258 (Pa.Cmwlth. 1996); *Povanda v. Workmen's Compensation Appeal Board (Giant Eagle Markets, Inc.)*, 146 Pa.Cmwlth. 320, 605 A.2d 478 (1992), *petition for allowance of appeal denied,* 533 Pa. 603, 617 A.2d 1276 (1992); *Cox v. Workmen's Compensation Appeal Board (Brookville Glove Manufacturing)*, 144 Pa.Cmwlth. 147, 601 A.2d 404 (1991); *see also Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Company)*, 514 Pa. 450, 525 A.2d 1204 (1987) and *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass)*, 515 Pa. 315, 528 A.2d 580 (1987). I believe that this evidentiary standard is proper given the inherent complex nature of this type of injury. Thus, claimant needed to present unequivocal medical testimony for the aggravation to be compensable.

Because I believe that claimant needed to provide unequivocal medical testimony establishing the requisite causal relationship between the workplace and the aggravation of her preexisting asthmatic condition, I reviewed in their entirety the reports of claimant's medical witness, Richard Green, M.D.[2] With regard to claimant's aggravation of her asthmatic condition, Dr. Green initially opined that it was "probably due to an ingredient in the baking preparation," but after performing several tests the doctor noted that he was unable to pinpoint the specific allergen which caused claimant's reaction on June 12, 1992. Original Record (O.R.), Dr. Green's July 9, 1992 and September 16, 1992

report. The doctor further stated that claimant is "an underlying allergic individual who will be easily irritated by working in a hot, humid environment ... and by airborne chemicals and particulates such as flour dust." O.R., Dr. Green's September 16, 1992 report. Dr. Green, however, made this statement after allergy skin testing revealed that claimant was not allergic to wheat flour and was minimally reactive to baker's yeast. *Id.* The doctor also noted that claimant had a history of a medication allergy.

Clearly, Dr. Green's medical opinions are less than positive and inconsistent. Therefore, they do not constitute legally competent evidence establishing the requisite causal relationship between the workplace and claimant's aggravation of her asthmatic condition. *See May Department Stores v. Workmen's Compensation Appeal Board (Smith)*, 105 Pa.Cmwlth. 580, 525 A.2d 33 (1987), *petition for allowance of appeal denied,* 516 Pa. 624, 532 A.2d 21 (1987). I must also note that Dr. Green's medical opinions are not refuted and were not subject to cross examination by employer.[3] Dr. Green did not admit to uncertainties regarding the cause of his diagnosis. Rather, the doctor provided an equivocal medical opinion due to inconclusive allergy tests.

Accordingly, I would reverse the Board's order and dismiss claimant's claim petition.

Judge LEADBETTER joins in this dissenting opinion.

402 A.2d 293 (1979) (obvious causal relationship established when claimant suffers back pain after lifting 140 pound handicapped child onto a school bus); *Morgan v. Giant Markets, Inc.,* 483 Pa. 421, 397 A.2d 415, (1979) (obvious causal connection exists when claimant experiences severe pain and feelings of paralysis after attempting to unload baking equipment from a truck).

2. I note that the majority in dicta concluded that Dr. Green's medical reports were unequivocal

and established that claimant's aggravation was causally related to the workplace.

3. Claimant relied solely on the medical reports of Dr. Green because she requested workers' compensation benefits for less than 52 weeks.