IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Liza M. Kozlowski, :
                  Petitioner :
                           :
         v.                : No. 1355 C.D. 2017
                           : Submitted: February 9, 2018
Workers' Compensation Appeal :
Board (Lehigh Valley Imaging MRI), :
                  Respondent :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: June 12, 2018

         Liza M. Kozlowski (Claimant), *pro se*, petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied her claim for workers' compensation benefits. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant failed to prove that she sustained a work-related injury. For the following reasons, we affirm.

         Claimant worked as a medical secretary for Lehigh Valley Imaging MRI (Employer). Her job included scheduling and checking in patients, answering phone calls, filing, and faxing. On May 26, 2015, Claimant filed a claim petition under the Workers' Compensation Act (Act)[1] alleging that on March 10, 2015, while she was sitting in her chair scheduling patients, she had a sudden onset of pain. The claim petition described the injury as "lower left back pain/sprain, thigh pain, left

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

leg and foot numbness/tingling." Certified Record (C.R.), Item 2, at 1. Employer filed an answer denying the averments of the petition.

The WCJ held a hearing, and Claimant testified in person. Claimant stated that she worked for Employer for 16 years, beginning in 1999. She worked five days a week and spent eight hours a day sitting in a chair, except when she took her lunch break. Claimant testified that on March 10, 2015, she was sitting in her chair scheduling patients over the phone, when she felt a "sudden onset" of low back pain that went down her leg and into her toes. Notes of Testimony (N.T. __), 10/21/2015, at 12. Claimant reported the incident to the office manager, who directed her to Health Works, where Dr. Richard Goy recommended exercises and physical therapy. Claimant did not do the exercises because they were "too painful" and she was too busy. *Id.* at 13. Claimant did not undertake the physical therapy because it was not covered by workers' compensation.

Claimant then saw Dr. Jeffrey Brown, her family doctor, who ordered x-rays and magnetic resonance imaging (MRI). He offered her prescription medication for pain, which Claimant declined to take, opting instead for Advil. Dr. Brown referred Claimant to Dr. Charles Norelli, an orthopedist, who recommended physical therapy, which she could not afford. Claimant testified that currently she "ha[s] nothing in treatment" and takes over-the-counter pain medications "occasionally." *Id.* at 16.

Claimant testified that since March 10, 2015, she has continued to perform her regular job; nevertheless, her symptoms tend to worsen at the end of the week and subside when she is at home. Her symptoms return when she returns to work. Claimant testified that she asked for a new chair at work, but the office manager rejected her request.

2

Claimant acknowledged that she injured her low back in 2011, although she could not recall how that injury occurred. She remembered that the pain lasted "for a while"; she saw Dr. Brown, who ordered an x-ray; and the pain subsided within a month and a half. *Id.* at 18. Claimant testified that the symptoms were "across the back" in 2011, and she does not have similar symptoms now. *Id.* at 19. Claimant testified that she experienced no other symptoms between 2012 and March 10, 2015.

Claimant submitted Dr. Brown's medical notes of May 28, 2015, stating that Claimant had lumbar radicular pain that lasted about 8 to 10 weeks with radiation down her left leg. The MRI result showed "[v]ery mild degenerative changes at L4-5 and L5-S1." C.R., Item 13, at 2.

Claimant also submitted medical records from Dr. Goy, which stated that

> [Claimant] attributes the pain to her work environment. She says her chair is very uncomfortable and is the cause of her pain. She spends most of [her] time sitting with occasional getting up an[d] moving around.

C.R., Item 15, at 6. Dr. Goy noted that there is "[n]o pertinent past medical history" and, thus, he based his opinion that the injury was work-related upon Claimant's statements and his physical examination of her. *Id.*

Finally, Claimant submitted medical records from Dr. Norelli, who examined her on June 29, 2015, and noted, *inter alia*, as follows:

> [Claimant] describes the pain as aching. Associated symptoms include numbness and tingling in left leg. This condition is related to repetitive activity. The injury was reported to take place at work. Prolonged Sitting. Relieving Factors include standing. Aggravating factors include sitting…. [Claimant] is also having increased pain on her L side in the area of her Piriformis muscle from prolonged sitting at work.

3

C.R., Item 14, at 2. Dr. Norelli reviewed Claimant's lumbar spine x-rays and an MRI performed on May 28, 2015, and diagnosed Claimant with lumbago, lumbar radiculopathy, and lumbar facet disease. He opined that "[Claimant's] Piriformis symptoms are aggravated by prolonged sitting." *Id*. at 4. Dr. Norelli's records also observed that there was "no pertinent past medical history." *Id*. at 1.

Employer presented the testimony of Kimberly Seidel, its office manager. Seidel testified that Claimant's job duties change from time to time, and "she's not always in scheduling." N.T., 2/25/2016, at 11. Claimant has a 30-minute lunch break and opportunities to "get out of her chair during a shift." *Id*. at 12. The chairs in the scheduling office are adjustable and have footrests. Seidel acknowledged telling Claimant that Employer did not intend to purchase new chairs because the existing ones are expensive and fully adjustable to conform with an employee's desired height, depth, tilt and lumbar settings.

Employer also submitted the report of its independent medical examiner, Dr. Scott Naftulin, who examined Claimant on October 18, 2015. Dr. Naftulin diagnosed Claimant with non-work-related, non-specific left low back pain with leg pain and numbness, and preexisting symptomatic mild lumbar disc degeneration. He opined that:

> Based upon the information provided, there is no precipitating event, trauma, or repetitive activity to suggest [Claimant] suffered a work-related lumbar spinal injury. Her clinical evaluation is unremarkable other than subjective tenderness. Her symptom distribution is not consistent with radiculopathy. Imaging findings, including those pre-dating the work injury by four years reveal mild degenerative change. There was no evidence of a more significant injury being sustained on recent MRI.

4

C.R., Item 18, at 4. Dr. Naftulin noted that his opinion was based upon his review of Claimant's lumbar spine x-rays dated October 3, 2011, and the MRI dated May 28, 2015.

The WCJ concluded that Claimant did not sustain a work-related injury. In doing so, she found Claimant's testimony "possibly credible" but "insufficient to carry her burden of proof with regard to causation, as that is a medical opinion." WCJ Decision, 9/15/2016, at 5; Finding of Fact No. 6. The WCJ credited the opinion of Employer's independent medical examination (IME) physician, Dr. Naftulin, and rejected the opinions of Drs. Goy and Norelli because they were unaware of Claimant's prior back injury in 2011. The WCJ noted that although Dr. Brown was aware of the 2011 injury, he did not consider it in his diagnosis. The WCJ further found "the condition is not as severe as Claimant reports" because she has not taken the recommended medication or performed the recommended exercises. *Id.* at 5; Finding of Fact No. 8.

Claimant appealed to the Board, arguing, *inter alia*, that the WCJ erred by considering her previous back injury, which has no relevance in this case. The Board affirmed, explaining that because the injuries alleged in her claim petition were not obviously work-related, Claimant had to present unequivocal medical evidence on causation. The Board held that Claimant failed to satisfy that burden. Claimant petitioned for this Court's review.[2]

On appeal, Claimant argues that the WCJ erred by evaluating the expert medical opinions based on awareness of her 2011 back injury. Claimant maintains

---

[2] This Court's review of an order of the Board is to determine whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

that her previous injury "had resolved itself" and, therefore, is irrelevant to this case. Claimant Brief at 4. Claimant contends that the WCJ and the Board should have considered the opinions of Drs. Goy and Norelli that her present injury was work-related. Claimant requests this Court to "reevaluate" the physicians' opinions. *Id.* at 3.

To establish eligibility for compensation under the Act, a claimant has the burden of proving that her injury occurred in the course of employment and was related to that employment. *Miller v. Workmen's Compensation Appeal Board (Pocono Hospital)*, 539 A.2d 18, 20 (Pa. Cmwlth. 1988). What is required to establish a causal connection between a claimant's injuries and employment depends on whether the injury is obviously work-related. *Kensington Manufacturing Co. v. Workers' Compensation Appeal Board (Walker)*, 780 A.2d 820, 822 (Pa. Cmwlth. 2001). This Court has explained:

> [A]n obvious work-related injury is one that immediately manifests itself while a claimant is in the act of performing work, the nature of which can cause the injury. A classic example would be the laborer who grabs his back in pain after lifting his shovel full of wet concrete. In such a case, the causal connection is so clear that a lay person can see the connection. Under such circumstances, the claimant's testimony is sufficient to connect the injury to the claimant's employment, and additional medical testimony is not required.

*Id*. (quoting *Giant Eagle, Inc. v. Workers' Compensation Appeal Board (Thomas)*, 725 A.2d 873, 876 (Pa. Cmwlth. 1998)). *See also Northwest Medical Center v. Workers' Compensation Appeal Board (Cornmesser)*, 880 A.2d 753, 755 (Pa. Cmwlth. 2005) ("A causal connection is obvious where an individual is doing an act that requires force or strain and pain is immediately experienced at the point of force or strain.").

6

Where the causal connection between an injury and the alleged work-related cause is not obvious, the connection must be established by unequivocal medical evidence. *Miller*, 539 A.2d at 20. "Evidence is unequivocal if it establishes, to a reasonable degree of medical certainty, that the injury was, in fact, work related." *Berrian v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 829 A.2d 724, 728 (Pa. Cmwlth. 2003).

Here, Claimant testified that on March 10, 2015, while she was sitting in her chair scheduling patients, she felt a sudden onset of low back pain that went down her leg and into her toes. N.T., 10/21/2015, at 12. She attributed her injury to prolonged sitting and the chair itself. We agree with the Board that the causal connection between Claimant's low back pain and her employment was not obvious because Claimant was not "doing an act that requires force or strain." *Northwest Medical Center*, 880 A.2d at 755. Further, Claimant's medical history included a prior back injury in 2011. Claimant had to present unequivocal medical evidence to connect the current injury to her employment.

> Dr. Goy opined that the injury was work-related because
>
> [Claimant] attributes the pain to her work environment. She says her chair is very uncomfortable and is the cause of her pain. She spends most of [her] time sitting with occasional getting up an[d] moving around.

C.R., Item 15, at 6. In other words, Dr. Goy's opinion was based upon Claimant's complaints. He was unaware of Claimant's prior back injury, and he did not review her x-ray or MRI results. Likewise, Dr. Norelli's opinion was based upon Claimant's complaints and his review of her lumbar spine x-rays and MRI taken in 2015 following the current injury. He did not review Claimant's 2011 x-rays. Because Drs. Goy and Norelli did not consider Claimant's past medical history in

7

forming their opinions, they did not establish, "to a reasonable degree of medical certainty," that the injury was work-related. *Berrian*, 829 A.2d at 728.

By contrast, Dr. Naftulin reviewed Claimant's 2011 lumbar spine x-ray films and the 2015 MRI report. According to Dr. Naftulin, these imaging reports revealed mild degenerative changes that predated the alleged work injury, and "[t]here was no evidence of a more significant injury being sustained on [the] recent MRI." C.R., Item 18, at 4. The WCJ found Dr. Naftulin's opinion more credible than the opinions of Drs. Goy and Norelli, which was within his province. It is well established that a WCJ, as a fact finder, has "exclusive province over questions of credibility and evidentiary weight, and the [WCJ]'s findings will not be disturbed when they are supported by substantial, competent evidence." *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). It is irrelevant that the record contains evidence which supports a finding contrary to that made by the WCJ; the pertinent inquiry is whether evidence exists that supports the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). Because Dr. Naftulin's report constituted substantial evidence that Claimant's current injury was not work-related, the WCJ did not err in denying her claim petition.

For all of the foregoing reasons, we affirm the Board's order.

_____
MARY HANNAH LEAVITT, President Judge


Judge Fizzano Cannon did not participate in the decision in this case.

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Liza M. Kozlowski,                          :
                    Petitioner              :
                                            :
            v.                              :   No. 1355 C.D. 2017
                                            :
Workers' Compensation Appeal                :
Board (Lehigh Valley Imaging MRI),          :
                    Respondent              :

# **O R D E R**

AND NOW, this 12th day of June, 2018, the order of the Workers'
Compensation Appeal Board dated August 16, 2017, in the above-captioned matter
is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge