IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Chidiac,                                    :
                              Petitioner          :
                                                  :
              v.                                  :    No.  406 C.D. 2020
                                                  :    Submitted:  September 18, 2020
Workers' Compensation Appeal                      :
Board (US Airways, Inc.),                         :
                              Respondent          :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge[1]
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                          FILED:  March 23, 2021


              James Chidiac (Claimant) petitions for review of an order of the
Workers' Compensation Appeal Board (the Board) denying his claim for Workers'
Compensation (WC) benefits under the Pennsylvania Workers' Compensation Act
(Act).[2]  Claimant alleges that he sustained a work-related injury in the course of his
employment for US Airways, Inc. (Employer).  Claimant asserts that the Board erred
in reversing the decision and order of the Workers' Compensation Judge (WCJ)
granting Claimant's Claim Petition.  Claimant argues that his testimony was
supported by competent evidence and that the evidence demonstrated work-related
causation for Claimant's injury.  However, the Board denied Claimant WC benefits

_____

[1] The case was assigned to the opinion writer before January 4, 2021, when Judge Brobson
became President Judge.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

on the basis that Claimant's alleged injury was not "obviously" work-related and that Claimant's evidence did not support causation. Upon review, we affirm the Board's Order.

## I. Background

Claimant has worked for Employer as a union flight attendant since 2013. Reproduced Record (R.R.) at 49a-50a. On September 20, 2016, Employer issued a new flight attendant uniform made by Twin Hill. *Id.* at 53a, 96a. Due to a delay, Claimant received his uniform in October 2016. *Id.* at 53a-54a. After wearing his uniform, at some time in October 2016, Claimant developed rash-like symptoms on his neck and below his ear. *Id.* at 52-53a. In November 2016,[3] Claimant sought treatment from his family doctor, Dr. Mark Watkins, D.O., for the rash, which had spread to other parts of his body. *Id.* at 98a.

Claimant placed Employer on notice of his rash, an alleged work injury, in April 2017. *Id.* at 98a-101a. Claimant consulted Dr. Watkins, who referred him to the Asthma Center of Philadelphia for evaluation. *Id.* at 99a. At the time of this evaluation, Claimant observed that the rash had changed in appearance, covering the underside of both arms and was raised, not smooth. *Id.* Following the onset of his symptoms, Claimant filed a Uniform Reactions Report and switched to a second new uniform, made by Aramark, in early May 2017. *Id.* at 101a. However, after wearing the alternate uniform, Claimant experienced a rash on his neck and a lump under his

---

[3] In his deposition on October 19, 2017, Claimant testified to this November 2016 visit with Dr. Watkins. However, notes from this encounter are not included in the record. When asked about this visit during his testimony, Claimant stated:

> Q. What sort of treatment did Dr. Watkins provide you?
> A. He adjusted my . . . antianxiety pills. He thought maybe that was causing exhaustion. **So, that's the only thing.**

R.R. at 98a (emphasis added). While Claimant repeatedly references this visit as evidence of his work-related skin condition, we are unable to evaluate the details of the encounter.

right armpit. *Id.* at 101a-02a. Claimant once again sought medical treatment and was ultimately hospitalized at Penn Hospital with cellulitis and a staph infection. *Id.* at 1a, 57a-59a.

On August 11, 2017, Claimant filed a Claim Petition for WC benefits from Employer, assigning May 20, 2017, as the alleged injury date. *Id.* at 1a. Claimant sought the payment of total disability benefits from May 21, 2017 through July 13, 2017. *Id.* at 2a. Employer denied the allegations set forth in the Claim Petition. *Id.* at 6a-7a.

The WCJ found that Claimant sustained a work-related injury in the nature of "'an allergic reaction to his work uniform resulting in development of cellulitis and methicillin-sensitive Staphyloccocus aureus ("MSSA") [staph infection] of the right axilla and chest wall, necessitating hospitalization and surgical intervention followed by post-operative wound care.'" WCJ Decision, 02/14/2019, Findings of Fact (F.F.) No. 14. Further, the WCJ found that "these conditions were supported, *inter alia*, by the credible medical evidence of record, particularly the initial treatment and hospital records, the diagnostic studies and [] Claimant's credible subjective complaints." *Id.* As a result, the WCJ granted Claimant's Claim Petition. WCJ Decision, 02/14/2019, at 11.

Employer subsequently appealed to the Board. In its April 21, 2020 opinion, the Board reversed the decision of the WCJ, dismissing the Claim Petition. The Board determined that while the WCJ found Claimant's medical evidence more credible than Employer's, the WCJ erred in finding that Claimant's allergic reaction

3

and development of cellulitis and a staph infection was obviously work-related. Bd. Op., 04/21/2020, at 6-7. Claimant now petitions this Court for review.[4]

## II. Discussion

In a WC claim petition proceeding, a claimant has the burden of establishing the right to compensation and all of the elements necessary to support an award, including the existence of an injury sustained in the course of, and as a result of, employment. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592 (Pa. 1993). A claimant must establish a causal connection between the disability and the work-related incident. *Id.* The requirements to successfully demonstrate causation depend upon whether the injury is obviously work-related. An obvious injury is one that immediately manifests itself while a claimant is in the act of doing the kind of work which can cause such an injury. *Calcara v. Workers' Comp. Appeal Bd. (St. Joseph Hosp.)*, 706 A.2d 1286 (Pa. Cmwlth. 1998).

However, an injury that does not immediately manifest itself while the employee is performing the job is not "obvious," and the claimant must establish a causal connection by unequivocal medical evidence in order to recover WC benefits. *Albert Einstein Healthcare v. Workers' Comp. Appeal Bd. (Stanford)*, 955 A.2d 478 (Pa. Cmwlth. 2008); *Jeannette Dist. Mem'l Hosp. v. Workers' Comp. Appeal Bd. (Mesich)*, 668 A.2d 249 (Pa. Cmwlth. 1995). Medical evidence will be considered unequivocal "if the medical expert, after providing a foundation, testifies that in his medical opinion" the facts show causation. *Haddon Craftsmen, Inc. v. Workers' Comp. Appeal Bd. (Krouchick)*, 809 A.2d 434 (Pa. Cmwlth. 2002). "If the

---

[4] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, and whether constitutional rights were violated. *Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger)*, 38 A.3d 1037 (Pa. Cmwlth. 2011).

4

claimant's expert has based his opinion regarding causation on a set of assumptions not substantiated by the record, such expert will be characterized as having proffered a legally incompetent opinion." *Se. Pa. Transp. Auth. v. Workers' Comp. Appeal Bd. (Herder)*, 765 A.2d 414 (Pa. Cmwlth. 2000); *see Zoltak v. Keystone–Harmony Dairy*, 408 A.2d 198 (Pa. Cmwlth. 1979) (evidence that is less than positive or based on conjecture falls short of the plateau of legally competent evidence).

Claimant asserts that his injury is obviously work related, and therefore, he does not need to prove a causal relationship between his injury and his employment with unequivocal medical testimony. In support of this assertion, Claimant cites *Giant Eagle, Inc. v. Workers' Compensation Appeal Board (Thomas)*, 725 A.2d 873 (Pa. Cmwlth. 1997). In *Giant Eagle, Inc.*, this Court upheld a WCJ's finding that a claimant's allergic reaction while working for the employer was work-related absent unequivocal medical evidence establishing that her skin rash was not related to her employment. *Id.* As the record established that the claimant had never experienced a similar episode prior to working for her employer or after leaving her employer, this Court held that the injury was obviously work related. *Id.*

Claimant argues that his testimony alone demonstrates that his injury was obviously work related. Claimant's Br. at 12. Claimant testified that his allergic reaction did not occur prior to wearing his new work uniform in October 2016, and that he has not experienced a similar medical problem since he stopped wearing the uniform in July 2017. *Id.*; R.R. at 54a-55a. Claimant asserts that while these circumstances demonstrate an obvious work-related injury, he also provided unequivocal medical evidence. Claimant notes that he produced multiple sources of evidence beyond his own testimony, including medical evidence, a January 2018 uniform textile report from the National Institute for Occupational Safety and Health

5

(NIOSH),[5] and evidence of Employer's conduct, i.e., setting up a call center to assist employees with skin problems.[6] Claimant's Br. at 12; R.R. at 148a-312a.

Employer asserts that the Board correctly reversed the WCJ's decision because Claimant's injury was not obvious, and therefore, he was required to prove his case with unequivocal medical evidence. Employer further argues that Claimant failed to meet his burden of proving work-related causation for his injury with the support of unequivocal medical evidence. Specifically, Employer contends that Claimant failed to present any evidence that causally linked the wearing of a work uniform to a staph infection that presented eight months later. Employer's Br. at 18.

[5] In a letter dated January 10, 2018, the NIOSH of the United States Department of Health and Human Services provided a chemical analysis of Employer's Twin Hill uniform, the same type as the first "new" uniform that Claimant was issued around September/October 2016. The NIOSH directed its letter to Mr. James T. Johnson, Managing Director of Environmental Legal Issues for Employer, "in response to an employee request to the [NIOSH] at the Centers for Disease Control and Prevention (CDC) for a health hazard evaluation (HHE) regarding symptoms attributed to uniforms introduced from May to September 2016 [by Employer]." R.R. at 312a. As a result of its analysis, the NIOSH recommended that Employer "[c]ontinue to offer the multiple choices of uniforms to [its] employees," including the alternate Aramark uniform provided to Claimant in May 2017.

Further, the letter explained that "[e]mployees with persistent symptoms should be individually evaluated by an occupational medicine physician or a medical provider specializing in workplace illnesses." *Id.* at 316a. While the NIOSH letter provides context to this Court, it was not intended to serve as a professional medical opinion regarding Claimant's specific condition or injury. Therefore, in evaluating whether Claimant met his burden of proof in establishing work-related causation for his injury, the NIOSH letter cannot be considered unequivocal medical evidence for the purposes of the Act.

[6] The NIOSH letter, *supra* note 3, makes reference to an Employer-established "call center to handle concerns about the uniform." Certified Record (C.R.) at 19, C-5; R.R. at 312a. While the details of the "call center" are not described elsewhere within the Certified Record, Claimant presents the existence of a call center as evidence of Employer's conduct. However, Employer's conduct is not at issue in this case. It is the Claimant's burden to either demonstrate that his injury is obviously work related or to produce unequivocal medical evidence to show causation between his injury and his work for Employer. As the mere existence of a call center does not contribute to the Claimant meeting his burden in either scenario, we do not consider it to be dispositive in the present matter.

## A. Obviousness of Work Injury

A work injury is obvious where the nexus between the injury and the associated work is so clear that an untrained layperson would have no problem concluding that the claimant's symptoms were related to his work. *Calcara.* As a result, a person without medical or specialized knowledge can see the connection. *Id.* When a work injury is obvious, the claimant's testimony is sufficient to connect the injury to his employment and medical testimony is not required. *Id.*

In the present case, as noted by the Board in its opinion, a layperson lacks the knowledge to immediately determine the connection between the uniform provided by Employer and Claimant's staph infection. Further, in attempting to make this connection, an untrained individual must be able to observe the immediate manifestation of the symptoms of the alleged work injury. While Claimant attempts to demonstrate an immediacy in the onset of his symptoms in relation to wearing the new uniform, the timeline for the emergence of his symptoms is not clear.

Per the Certified Record, Claimant testified that he first noticed symptoms "shortly after" wearing the uniform in September and that he sought medical treatment for "rash[-]related issues" in November 2016 when the rash worsened. *See* C.R. at 14; *see also* R.R. at 97a-98a, 100a. Subsequently, in a hearing before the WCJ, Claimant testified that he did not receive his uniform until an unknown date in October, and while he noticed something on his neck and head around that time, he never sought medical treatment for these symptoms. R.R. at 53a-55a. The WCJ never reconciled these discrepancies in testimony. However, this variation in details complicates the ability of Claimant himself to demonstrate the immediate onset of the injury as a result of the work uniform.

7

Employer argues that even if we were to accept Claimant's testimony, albeit contradictory, regarding the immediate adverse reaction to his uniform and the resulting rash, there is a difference between a non-disabling rash and an infection eight months later. This Court previously held in *Stenger v. Workers' Compensation Appeal Board (Gateway Health, Inc.)* (Pa. Cmwlth., No. 676 C.D. 2013, filed November 15, 2013),[7] that there was no obvious connection between a claimant's staph infection and an injection that claimant received for her compensable shoulder/upper back strain and that unequivocal evidence was required to demonstrate causation. Further, even where the work-related nature of an initial injury is obvious, its relation to ongoing disability may not be; in that case, "there is a need for more than lay evidence, i.e., for medical evidence." *Cromie v. Workmen's Comp. Appeal Bd. (Anchor Hocking Corp.)*, 600 A.2d 677, 679 (Pa. Cmwlth. 1991).

Therefore, as the causal connection between Claimant wearing his work uniform and his resulting staph infection is not obvious, Claimant is required to present unequivocal medical evidence to support his Claim Petition. The Board did not err in concluding that Claimant's work injury was not obvious. We will now consider Claimant's medical evidence.

### B. Medical Evidence

The WCJ found that Claimant's medical evidence was more credible than Employer's medical evidence. WCJ Op., F.F. No. 11. The WCJ is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses. *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995) (citation omitted). Determinations of credibility and the weight to be afforded evidence are the prerogative of the WCJ, not the Board.

---

[7] This case is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

*Vols v. Workmen's Comp. Appeal Bd. (Alperin, Inc.)*, 637 A.2d 711 (Pa. Cmwlth. 1994). However, the Board reversed the WCJ's decision, stating that "[w]hile Claimant's medical experts did treat [him] for a rash, cellulitis and a staph infection, none of [the] experts unequivocally opined that his condition was related to [Employer's] work uniform." Bd. Op., 04/21/2020, at 8.

Claimant presented medical evidence from his family doctors, Dr. Matthew Fellows, M.D. and Dr. Mark Watkins, D.O., Dr. David LaRosa, M.D. of the Asthma Center of Philadelphia, and his treating physicians at Penn Hospital, including Dr. Jason J. Bofinger, M.D. As described previously, the WCJ found Claimant's medical evidence to be more credible than that provided by Employer. *See* WCJ Op., F.F. No. 11. In its opinion, the Board deferred to the WCJ's credibility determinations, but reversed the WCJ on the basis that Claimant's medical evidence did not provide unequivocal medical evidence to demonstrate causation between his employment with Employer and his injury.

Employer asserts that both Claimant and the WCJ misrepresented the contents of Claimant's medical evidence in regard to causation. For example, Dr. Bofinger, who treated Claimant for his staph infection during his stay at Penn Hospital, questioned whether Claimant's rash could be attributed to his work uniform. R.R. at 153a-55a. However, Dr. Bofinger did not relate Claimant's staph infection to the work uniform. *See id.* Additional notes from other treating physicians at Penn Hospital indicate that Claimant's condition was of an "unclear etiology." R.R. at 180a. A questionable opinion on causation is not sufficient to establish causation. *See Hous. Auth. of the City of Pittsburgh v. Workmen's Comp. Appeal Bd. (Sheffield)*, 646 A.2d 686 (Pa. Cmwlth. 1994); *see also Berks Cnty.*

9

*Intermediate Unit v. Workmen's Comp. Appeal Bd. (Rucker)*, 631 A.2d 801 (Pa. Cmwlth. 1993).

Further, in the medical records detailing Claimant's medical care prior to his hospitalization, Dr. LaRosa wrote that Claimant's symptoms, "are not consistent with a contact hypersensitivity or allergic inflammatory reaction. . . . I do not believe these are immediate hypersensitivity reactions." R.R. at 308a. While Dr. LaRosa did treat Claimant on April 17, 2017, for a "furuncle[8] underneath his left arm," Dr. LaRosa did not conclude that this skin condition was the result of Claimant's work uniform. *Id.* Additionally, Claimant's staph infection, the ultimate injury at issue in the instant case, presented under Claimant's right arm, while Dr. LaRosa treated Claimant for an issue under his left arm.

Finally, Claimant asserts that he was treated by his primary care physicians, Dr. Watkins and Dr. Fellows, for skin conditions that were caused by his work uniform and related to his subsequent staph infection. However, per the Certified Record, Claimant saw Dr. Fellows on September 30, 2016,[9] for a "B12 deficiency." *See* C.R. at 16, C-2; *see also* R.R. at 297a. Nothing from the notes of this visit indicates a complaint related to Claimant's skin. *See id.* On March 29, 2017, Claimant saw Dr. Watkins for a "boil in [his] right axilla." C.R. at 16, C-2; R.R. at 300a. Dr. Watkins recorded that Claimant reported using the "same soap" and that he "stopped using deodorant [two] weeks ago but [the boil] seems to have

---

[8] The Merriam-Webster Medical Dictionary defines a "furuncle" as a "boil." "Furuncle." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/furuncle (last visited Mar. 22, 2021).

[9] We note that this date is, by Claimant's account, prior to his receipt of his new Twin Hill uniform, which Claimant estimated to be around October 2016. R.R. at 54a-55a. The discrepancy in timeline surrounding Claimant's receipt of his first new uniform persists throughout this case.

10

worsened." C.R. at 16. C-2; R.R. at 302a. The report provides no further indication of causation, nor does it make any mention of Claimant's work uniform.

The Board correctly determined that none of Claimant's medical evidence is unequivocal evidence causally relating Claimant's skin condition and his resulting staph infection to the wearing of his work uniform. While Claimant's medical experts were credible, their medical evidence did not establish the causation necessary to connect Claimant's injury with his work for Employer. Therefore, the Board did not commit an error of law by reversing the WCJ's decision and order.

### III. Conclusion

For the foregoing reasons, we affirm the Order of the Board.

_____

J. ANDREW CROMPTON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Chidiac,                :
              Petitioner     :
                     :
        v.            :   No. 406 C.D. 2020
                     :
Workers' Compensation Appeal   :
Board (US Airways, Inc.),      :
            Respondent   :

# **O R D E R**

**AND NOW**, this 23rd day of March 2021, we **AFFIRM** the April 21, 2020 Order of the Workers' Compensation Appeal Board.

_____
J. ANDREW CROMPTON, Judge