IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Geisinger Wyoming Valley      :
Medical Center,      :
             Petitioner      :
     :
          v.      :
     :
Colleen Drozda (Workers'      :
Compensation Appeal Board),      :    No. 427 C.D. 2021
             Respondent      :    Argued: December 16, 2021


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge[1]
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON           FILED: February 28, 2022


       Geisinger Wyoming Valley Medical Center (Employer) petitions for review of the March 30, 2021 order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) granting Claimant's claim petition. Upon review, we affirm.


**I. Background**

       Claimant works for Employer as an x-ray technologist. WCJ's Decision, 3/5/20 at 3, Finding of Fact (F.F.) 8, Reproduced Record (R.R.) at 97a.

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

On March 27, 2019, Claimant was assisting a patient to get off an x-ray table when the patient pulled on Claimant's left arm, causing immediate pain in Claimant's neck and down her left arm. *Id.* Claimant also experienced a sensation down her entire left arm and her left-hand fingers went numb. *Id.*; *see also* Transcript of Testimony (T.T.), 11/26/19 at 12, R.R. at 39a. Claimant worked alone and immediately notified her supervisor of the incident via e-mail. F.F. 8. Claimant presented to Employee Health Services (Employee Health) the following morning and was prescribed muscle relaxers and four weeks of physical therapy. *Id.*; *see also* T.T., 11/26/19 at 13-14, R.R. at 40a-41a. Claimant continued to work, even though her condition did not improve. *Id.* Employee Health discharged Claimant on April 29, 2019. F.F. 8. Claimant was still experiencing extreme pain and began treatment with Dr. Ryan Ness for pain management. *Id.* Dr. Ness referred Claimant to Dr. Russell Strom, a neurosurgeon with Employer's Department of Neurosurgery, for a surgical consultation. F.F. 8-9; *see also* T.T., 11/26/19 at 19, R.R. at 46a. Claimant was prescribed another course of physical therapy by Dr. Akash Agarwal, Assistant Professor of Neurosurgery with the Milton S. Hershey Medical Center Department of Neurosurgery, in June 2019. F.F. 8 & 10. Both Dr. Agarwal and Dr. Strom recommended that Claimant undergo neck surgery. F.F. 8.

Employer initially accepted a work-related injury in the form of "left shoulder/neck strains" in connection with the March 27, 2019 work incident. *See* Notice of Temporary Compensation Payable dated April 23, 2019, R.R. at 1a; *see*

*also* F.F. 2.[2] Employer, Arch Indemnity Insurance Company and Esis, Inc.[3] (collectively, Respondents) halted the payment of benefits as of May 1, 2019 by means of a notice stopping temporary compensation and a notice of workers' compensation denial on the basis that Claimant did not sustain a work-related injury. F.F. 3. In May 2019, Claimant filed a claim petition alleging that she sustained a work-related injury on March 27, 2019 in the form of a cervical disc herniation[4] as well as left shoulder, left arm and left thumb numbness. F.F. 5. The claim petition described Claimant's work-related injuries as "injury to neck including but not limited to cervical disc herniation," along with "[l]eft shoulder injury," "[l]eft arm injury," and "[l]eft thumb numbness," further specifying that "Claimant may have other injuries which are not yet known[.]" Claim Petition at 2, R.R. at 8a. Respondents filed a timely answer to Claimant's claim petition, denying the material allegations. F.F. 6.

Claimant submitted a report based on an evaluation conducted by Dr. Strom on May 23, 2019. F.F. 9. Dr. Strom noted that he was treating Claimant on

---

[2] The Notice of Temporary Compensation Payable specifically described the "nature of injury" as "Strain or Tear (Internal derangement, the trauma to the muscle or the musculotendinous unit from violent contraction or excessive forcible stretch)" with "no tears," and noted that it occurred when a "[patient] pulled herself up using employee[']s arm." *See* R.R. at 1a.

[3] Arch Indemnity Insurance Company was identified as Employer's insurer and Esis, Inc. was identified as Employer's third-party administrator. *See* Notice Stopping Temporary Compensation at 1, R.R. at 3a; Notice of Workers' Compensation Denial at 1, R.R. at 5a.

[4] The cervical spine contains six intervertebral discs, which are situated between adjacent vertebrae (one above and one below). *See Cervical Herniated Disc Symptoms and Treatment Options*, SPINE-*HEALTH*, *available at* https://www.spine-health.com/conditions/herniated-disc/cervical-herniated-disc-symptoms-and-treatment-options (last visited Feb. 25, 2022). "A herniated disc occurs when part or all of its protective outer layer tears and some of the nucleus pulposus[, the gel-like interior which provides additional cushioning and flexibility,] leaks into the tear." *Id.*

referral from Dr. Michael James Grasso[5] for neck pain radiating to the left thumb with associated numbness and due to her difficulty with fine motor skills and her tendency to drop objects. *Id.*; *see also* Dr. Auerbach Independent Medical Examination (IME) at 1, R.R. at 93a. Dr. Strom concluded that the magnetic resonance imaging (MRI) study revealed a disc herniation at C5-C6 causing severe cord compression, and that these findings correlated with Claimant's complaints. F.F. 9; *see also* Dr. Strom Report at 8, R.R. at 78a. Further, Dr. Strom explained that the weakness in Claimant's left hand was consistent with early cervical spondylotic myelopathy[6] from cord compression, which usually results in progressive neurologic decline. *Id.*; *see also* Dr. Strom Report at 8-9, R.R. at 78a-79a. Dr. Strom recommended surgical intervention. F.F. 9.

Claimant also submitted a report from Dr. Agarwal dated June 12, 2019 following his examination of Claimant. *See* Dr. Agarwal Outpatient Letter at 1, R.R. at 80a. Dr. Agarwal noted that Claimant "describe[d] symptoms of cervical radiculopathy on the left as well as neck pain." *Id.* at 2, R.R. at 81a; *see also* F.F. 10. Dr. Agarwal further noted that Claimant's MRI study demonstrated disc herniation and disc osteophyte complex eccentric[7] causing neural foraminal

---

[5] Claimant testified that Dr. Grasso was her family doctor. *See* T.T., 11/26/19 at 17, R.R. at 44a.

[6] "Cervical spondylotic myelopathy . . . is myelopathy (spinal cord damage) caused by spondylosis (degeneration) in the cervical spine (neck)." *Cervical spondylotic myelopathy*, COLUMBIA NEUROSURGERY, *available at* https://www.neurosurgery.columbia.edu/patient-care/conditions/cervical-spondylotic-myelopathy (last visited Feb. 25, 2022).

[7] "Disc osteophyte complex is the development of osteophytes (bone spurs) affecting more than one intervertebral disk or spinal vertebrae." *Disc Osteophyte Complex*, THE BONATI INSTITUTE, *available at* https://www.bonati.com/blog/treatmetn-disc-osteophyte-complex/ (last visited Feb. 25, 2022).

narrowing,[8] left more than right, which would account for Claimant's symptoms. Dr. Agarwal Outpatient Letter at 2, R.R. at 81a; *see also* F.F. 10.

Employer submitted a report based on an IME of Claimant conducted by Dr. Joshua Auerbach, an orthopedic surgeon, on August 19, 2019. F.F. 11. Dr. Auerbach opined that Claimant had a longstanding history of complaints pertaining to her neck, which predated the March 27, 2019 work incident, and that Claimant had not been forthcoming regarding her medical history. *Id.* Dr. Auerbach further opined that Claimant had sustained a cervical strain and sprain but experienced no aggravation of any preexisting degenerative cervical disc disease. *Id.*

Employer also submitted an addendum report from Dr. Auerbach dated November 12, 2019, based on his review of additional medical records of Claimant generated by orthopedic surgeon Dr. David Kolessar and Dr. Grasso. *See* Dr. Auerbach Addendum at 1, R.R. at 93a. Dr. Auerbach noted that his review of the records indicated that Claimant received treatment for isolated left-sided carpal tunnel syndrome prior to the March 27, 2019 work incident. *Id.* at 2, R.R. at 94a. Dr. Auerbach stated that his opinion remained unchanged, and that Claimant experienced a cervical strain and sprain in the setting of preexisting degenerative cervical disease. *Id.*

---

[8] The term "Neural foraminal narrowing," also referred to as "neural foraminal stenosis," refers to "compression of a spinal nerve as it leaves the spinal canal through the foramen (the opening between the vertebrae through which spinal nerve roots travel and exit to other parts of the body)." *Neural Foraminal Stenosis Definition*, SPINE-*HEALTH*, *available at* https://www.spine-health.com/glossary/neural-foraminal-stenosis (last visited Feb. 25, 2022). Neural foraminal narrowing "may occur in either the lower back (lumbar spine) or the neck (cervical spine), and be caused by an osteophyte, a foraminal herniated disc, or collapse of the disc space." *Id.*

Claimant testified that she underwent surgery to alleviate carpal tunnel syndrome in January 2019, from which she completely recovered in six weeks. She experienced no other problems with her left hand pre-dating the March 27, 2019 work incident. F.F. 8; *see also* T.T., 11/26/19 at 19, R.R. at 46a.

After falling down a set of steps in 2009, Claimant experienced muscle pain in the back of her neck which resolved in about 10 days. F.F. 8. Claimant had not been diagnosed with a herniated cervical disc prior to the March 27, 2019 work incident, nor had she previously experienced similar symptoms. *Id.* Claimant asserted that in addition to other inaccuracies,[9] Dr. Grasso's records erroneously indicated that she was treating with him for neck pain. *Id.*; *see also* T.T., 11/26/19 at 17, 22, 35-36, R.R. at 44a, 49a, 62a-63a.

Claimant has been able to perform her regular job duties, although she struggles to transfer heavier patients. F.F. 8. Claimant also experiences difficulty vacuuming, carrying her purse on her left shoulder, reading the newspaper, turning her head to the right, and sleeping. *Id.*[10]

On March 5, 2020, the WCJ rendered a decision and order granting the claim petition. *See* WCJ's Decision, 3/5/20 at 1-6, R.R. at 95a-100a. The WCJ

---

[9] Claimant further noted that Dr. Grasso's records incorrectly identified her height and erroneously stated that she had an aneurism in a lower extremity and that her cerebral aneurism was non-ruptured. *See* T.T., 11/26/19 at 37, R.R. at 63a.

[10] Claimant further testified that she has received medical care in the past for a ruptured brain aneurism, and that she treats with Dr. Ness for pain management necessitated by a prior lumbar spinal fusion and problems with her sacroiliac joints. F.F. 8.

"The sacroiliac joint connects the hip bones (iliac crests) to the sacrum, the triangular bone between the lumbar spine and the tailbone (coccyx). The primary function of the sacroiliac joints is to absorb shock between the upper body and the pelvis and legs." *Sacroiliac Joint Dysfunction (SI Joint Pain)*, SPINE-*HEALTH*, *available at* https://www.spine-health.com/conditions/sacroiliac-joint-dysfunction/sacroiliac-joint-dysfunction-si-joint-pain (last visited Feb. 25, 2022).

found Claimant's testimony genuine and credible based on his observations of her bearing and demeanor at the hearing. F.F. 8. The WCJ reasoned that "Claimant's credibility [was] further bolstered by the fact that [she] has continued to work despite her injuries." *Id.* Thus, the WCJ "specifically accepted [Claimant's testimony] as fact." *Id.*

The WCJ also pointed out that Dr. Strom and Dr. Agarwal noted a correlation between the findings in the MRI study and Claimant's subjective presentation, and that both doctors agreed that Claimant's work-related injury was the cause of her complaints. *Id.* Thus, even though Claimant had not missed any time from work due to her injuries, the WCJ concluded that Claimant met her burden of demonstrating that she suffered disc herniations at C4-C5 and C5-C6 as a result of a work-related injury sustained in the March 27, 2019 work incident. F.F. 13; Conclusion of Law (C.L.) 2.[11]

The WCJ rejected Dr. Auerbach's opinions as lacking credibility. F.F. 12. The WCJ found Claimant's factual testimony concerning her personal medical history more credible than the "inferences" made by Dr. Auerbach following his review of Claimant's medical records. *Id.* Moreover, the WCJ reasoned that the qualifications of Dr. Strom and Dr. Agarwal as neurosurgeons were "more persuasive" than those of Dr. Auerbach as an orthopedic surgeon, given the nature of Claimant's injuries. *Id.* The WCJ further reasoned that the opinions of Dr. Strom and Dr. Agarwal were consistent and supported by Claimant's credible testimony,

---

[11] In addition to granting Claimant's claim petition, the WCJ ordered that Respondents shall be responsible for the payment of medical bills associated with treatment of Claimant's work-related injury and also for reimbursement of Claimant's reasonable litigation costs. WCJ's Decision, 3/5/20 at 6, R.R. at 100a.

7

whereas the opinions of Dr. Auerbach were contradicted by those of Claimant's doctors and were undermined by Claimant's testimony. *Id.*

Employer appealed to the Board, which affirmed the WCJ's decision by opinion and order dated March 30, 2021. *See* Board's Opinion and Order, 3/30/21 at 1-9, R.R. at 108a-16a. The Board concluded that the WCJ did not err in determining that Claimant met her burden of establishing that she sustained a work-related injury, because the WCJ accepted her testimony regarding her work injury and the pain she felt immediately afterwards. *Id.* at 6, R.R. at 113a (citing *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 597 (Pa. 1993); *Morgan (Workmen's Comp. Appeal Bd.) v. Giant Mkts., Inc.*, 397 A.2d 415 (Pa. 1979))f. The Board noted that Claimant's credible testimony and the diagnosis of disc herniations at C4-C5 and C5-C6 rendered by Dr. Strom and Dr. Agarwal supported the WCJ's decision. *See id.*[12] Thus, the Board rejected Employer's assertion that the WCJ's decision lacked substantial and competent evidentiary support. *Id.* The Board further noted the Pennsylvania Supreme Court's holding that medical testimony is not required to establish the requisite causal connection where a claimant sustains an alleged work injury while engaging in an act requiring force or strain and experiences pain at the point of force or strain. *Id.* (citing *Morgan*). Thus, the Board concluded that even without the additional medical evidence, Claimant's credible testimony as to pain experienced in her neck and left arm, with associated numbness and tingling in her left arm and hand, immediately

---

[12] Employer notes that Dr. Strom's diagnosis did not include a C4-C5 disc herniation. *See* Employer's Br. at 27. This observation appears to be correct. *See* Dr. Strom Report at 8, R.R. at 78a.

8

following the March 27, 2019 work incident, alone sufficed to establish the requisite causal connection. *Id.* at 6-7, R.R. at 113a-14a.

The Board acknowledged that an expert medical opinion rendered in the absence of a full understanding of the alleged work incident or the claimant's medical situation may be deemed incompetent. *Id.* (citing *Long v. Workers' Comp. Appeal Bd. (Integrated Health Serv., Inc.)*, 852 A.2d 424, 428 (Pa. Cmwlth. 2004)). Further, the Board "acknowledge[d] that the WCJ's finding that both Dr. Strom and Dr. Agarwal agree[d] that Claimant's work-related injury was the cause of her complaints . . . [was] not clearly supported by [the Board's] review of their reports." *Id.* at 7 n.2, R.R. at 114a (citing F.F. 12).

Nevertheless, the Board reasoned, "the mere fact that Dr. Strom did not specifically mention the work-related incident in his report [was] not enough to establish that he did not have a full understanding of Claimant's situation and [to] find him incompetent." *Id.* at 7, R.R. at 114a. The Board noted that its "review of Dr. Strom's report reveal[ed] a detailed assessment and plan based upon Claimant's presenting symptoms and previous treatments up until that point," and that "Dr. Strom also reviewed radiographic imaging to support his diagnoses." *Id.* Therefore, the Board rejected Employer's contention that Dr. Strom's opinion was not competent on the basis that he failed to opine regarding whether Claimant's injuries were work-related. *Id.* at 7, R.R. at 114a.

Further, the Board "reiterate[d] that a medical opinion establishing causation was not required in [the present] matter as the injury was obvious pursuant to *Morgan*."[13] *Id.* The Board concluded that both Dr. Strom's failure to specifically

---

[13] The chairman of the Board dissented on the basis that "[w]hile it [was] not beyond reason that Claimant sustained an injury, the medical evidence [did] not support [the] conclusory

9

mention a work injury and Dr. Agarwal's failure to proffer an explicit opinion on causation were harmless errors in light of its determination that Claimant's credible testimony sufficed to establish causation. *Id.* (citing *Morgan*).

Employer petitioned this Court for review.[14]

## II. Issues

Before this Court,[15] Employer contends that the Board erred in relying on *Morgan* because Claimant's alleged work injury in the form of disc herniations at C4-C5 and C5-C6 was not obvious. *See id.* at 25-32. Further, Employer maintains that *Morgan* is distinguishable from the present matter, because "[a]lthough pain is an excellent indication of [an] injury, pain, in and of itself, is simply insufficient . . . to [support] a diagnosis of disc herniations in the cervical spine." *Id.* at 26. Thus, Employer asserts that Claimant failed to prove that she sustained a work-related injury in the form of disc herniations at C4-C5 and C5-C6 as a result of the March 27, 2019 work incident simply by testifying to the pain she felt immediately following the incident. *Id.* at 26-27.

---

determination of C4-[C]5; C5-[C]6 disc herniation." Board's Opinion and Order, 3/30/21 at 9, R.R. at 116a. The dissenting chairman thus reasoned that it was "plausible" Claimant sustained irritation with muscle spasm, further noting that osteophyte formation and narrowing is degenerative. *Id.*

[14] In June 2021, Employer filed a petition for supersedeas, which this Court denied by order dated July 12, 2021. *See Geisinger Wyo. Valley Med. Ctr. v. Drozda (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 427 C.D. 2021, filed July 12, 2021).

[15] This Court's scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed or whether any finding of fact necessary to support the decision is not supported by substantial evidence. *Odd Fellow's Home of Pa. v. Workmen's Comp. Bd. of Appeal (Cook)*, 601 A.2d 465, 467 (Pa. Cmwlth. 1991) (citing Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704).

Additionally, Employer asserts that the medical evidence proffered by Claimant fails to establish the requisite causal connection. *See id.* at 24-26. Employer notes that Dr. Strom's May 23, 2019 report contains no reference to any work-related injury. *Id.* at 24. Employer also points out that Dr. Strom identified only a C5-C6 disc herniation causing severe cord compression, omitting mention of a C4-C5 disc herniation and failing to opine regarding whether Claimant's C5-C6 disc herniation was caused by the March 27, 2019 incident. *Id.* at 27. Thus, Employer asserts that the WCJ's finding that Dr. Strom agreed Claimant's work injury was the cause of her complaints is "simply untrue[.]" *Id.* at 24-25 (citing F.F. 12).

Employer also maintains that although Dr. Agarwal confirmed in his June 14, 2019 letter[16] that Claimant suffers from C4-C5 and C5-C6 disc herniations and osteophyte complexes, Dr. Agarwal nevertheless failed to specifically opine as to whether the March 27, 2019 work incident was the cause. *Id.* at 24-25 & 29. Thus, Employer asserts that the WCJ erred in finding that both Dr. Strom and Dr. Agarwal agreed that the March 27, 2019 work incident was the cause of Claimant's injury in the form of disc herniations at C4-C5 and C5-C6. *Id.* at 25. Employer "concedes that expert medical evidence would not be required to establish a diagnosis of neck pain radiating down the left arm with numbness and tingling in the hand," as such symptoms "would be [indicative of] an obvious injury[.]" *Id.* at 29-30. However, Employer notes that the WCJ identified Claimant's work injury as C4-C5 and C5-C6 disc herniations and maintains that the causal relation to the March 27, 2019 work incident is not obvious, as it is not readily discernible by an

---

[16] Employer presumably intends to reference Dr. Agarwal's report dated June 12, 2019 and signed electronically on June 14, 2019. *See* Dr. Agarwal Outpatient Letter at 1, R.R. at 80a.

11

untrained layperson. *See id.* Thus, Employer maintains that the Board erred in affirming the WCJ's determination on the basis that Claimant's testimony alone sufficed to establish that she sustained a work-related injury in the form of disc herniations at C4-C5 and C5-C6. *See id.*

Moreover, Employer contends that Claimant's failure to seek medical treatment immediately following the March 27, 2019 incident and her ability to continue performing her regular job duties undermines her position. *See id.* at 31. Employer, therefore, maintains that Claimant's testimony would "[a]t best" support a causal relationship between the March 27, 2019 work incident and a diagnosis of strain or contusion. *Id.* Thus, Employer requests that this Court reverse the Board's March 30, 2021 order. *Id.* at 34.

### III. Discussion

"In a workers' compensation claim petition proceeding, the claimant has the burden of establishing the right to compensation and all of the elements necessary to support an award, *i.e.*, an injury sustained in the course of employment and related thereto." *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Thomas)*, 725 A.2d 873, 876 (Pa. Cmwlth. 1999) (citing *Inglis House*, 634 A.2d 592). "[U]nequivocal medical testimony is required to establish a causal connection between an accident and a disability [o]nly where the connection is not obvious." *Morgan*, 397 A.2d at 416; *see also Giant Eagle, Inc.*, 725 A.2d at 876 ("What is required to establish this causal connection is dependent upon whether or not the injury is obviously work-related."). "An obvious relationship exists where the claimant's injuries immediately and directly or naturally and probably result from a work incident; in such cases, the fact finder is not required to depend alone, or at all,

12

upon medical testimony to find the causal connection." *Metelo v. Workmen's Comp. Appeal Bd. (Old Original Bookbinders Rest.)*, 642 A.2d 653, 655 (Pa. Cmwlth. 1994) (emphasis omitted); *cf. Whiteside v. Workmen's Comp. Appeal Bd. (Unisys Corp.)*, 650 A.2d 1202, 1204-07 (Pa. Cmwlth. 1994) ("claimant was required to provide unequivocal medical testimony that her physical condition was caused by her work environment" where claimant testified that an increase in job-related stress caused various physical maladies and "there [was] no discrete incident to which the injury [could] be attributed"). This Court has explained:

> An obvious injury is one that immediately manifests itself while a claimant is in the act of doing the kind of work which can cause such an injury. A classic example would be the laborer who grabs his back in pain after lifting his shovel full of wet concrete. In such a case, the causal connection is so clear that a lay[]person can see the connection. Under such circumstances, the claimant's testimony is sufficient to connect the injury to the claimant's employment, and additional medical testimony is not required.

*Giant Eagle, Inc.*, 725 A.2d at 876 (citations omitted).

Employer asserts that the Board erroneously relied on *Morgan* to conclude that Claimant established the requisite causal connection between the March 27, 2019 work incident and the cervical disc herniations simply by testifying to the pain she experienced immediately following the incident.[17] *See* Employer's

---

[17] Employer's fourth question presented reads as follows:

> Whether the [] Board committed an error of law in finding that [] Claimant was not required to submit any unequivocal expert medical opinion evidence to establish that she sustained a work[-

13

Br. at 26-27. We disagree. In *Morgan*, the claimant injured his back while unloading items off of employer's delivery truck. *See Morgan*, 397 A.2d at 415-16. The claimant testified that he immediately experienced "a lot of pain" and "a feeling of being paralyzed." *Id.* He initially treated with "the company doctor," who referred him to an orthopedic surgeon with whom he treated for approximately three months. *Id.* at 416. The claimant did not proffer any expert medical evidence. *Id.* at 415. He received a favorable workers' compensation award, which this Court reversed. *Id.* On appeal, the Pennsylvania Supreme Court reversed this Court's decision. Identifying the central issue as whether the facts as testified to by the claimant established the requisite causal connection between the work incident and the asserted injury, *id.*, our Supreme Court held:

> The long-established rule is that unequivocal medical testimony is required to establish a causal connection between an accident and a disability [o]nly where the connection is not obvious. . . . Where one is doing an act that requires force or strain and pain is experienced at the point of force or strain, the injury may be found to have been established. Pain is an excellent symptom of an

---

]related injury and to establish causation between the work event and the diagnosis of disc herniations at C4-[C]5 and C5-[C]6.

Employer's Br. at 4. We note that to the extent this question could be construed as asserting that Claimant did not sustain any work injury, such a contention would be unavailing. The WCJ credited Claimant's testimony that she experienced pain in her neck and down her left arm, a sensation down her left arm and numbness in her fingers immediately following the work incident. *See* F.F. 8. Further, Claimant treated with Employee Health the following morning. *See* F.F. 8; T.T., 11/26/19 at 13-14, R.R. at 40a-41a. Moreover, Dr. Auerbach opined on behalf of Employer that Claimant sustained a cervical strain/sprain. *See* F.F. 11; *see also* Dr. Auerbach IME at 7-8, R.R. at 90a-91a; Dr. Auerbach Addendum at 2, R.R. at 94a. Significantly, Employer in fact "concedes that pain at the time of the incident would support a finding of a sprain or strain at best." Employer's Br. at 26. Thus, we find that the Board did not err in affirming the WCJ's determination that Claimant sustained a work-related injury. *See* C.L. 2; Board's Opinion and Order, 3/30/21 at 6-7, R.R. at 113a-14a.

injury. Of course, the trier of fact will determine the credibility of the witness's testimony as to the total situation. We, therefore, find substantial competent evidence in the record to support the conclusion of the [Board] that the above facts establish a causal connection between the work incident and [claimant's] injury.

*Id.* at 416 (citations and quotation marks omitted).

Here, the WCJ credited Claimant's testimony that she experienced pain in her neck and down her left arm, a sensation down her left arm and left-hand numbness in her fingers immediately after the March 27, 2019 work incident. *See* F.F. 8; *see also* T.T., 11/26/19 at 12, R.R. at 39a. Like the injured employee in *Morgan*, Claimant was "doing an act that requires force or strain and pain [was] experienced at the point of force or strain[.]" *Morgan*, 397 A.2d at 416. As noted above, "[a]n obvious injury is one that immediately manifests itself while a claimant is in the act of doing the kind of work which can cause such an injury. . . . Under such circumstances, the claimant's testimony is sufficient to connect the injury to the claimant's employment, and additional medical testimony is not required." *Giant Eagle, Inc.*, 725 A.2d at 876; *see also Tobias v. Workmen's Comp. Appeal Bd. (Nature's Way Nursery, Inc.)*, 595 A.2d 781, 784-85 (Pa. Cmwlth. 1991) (noting that an "'[o]bvious' . . . connection between [an] injury and a disability" may "involve an immediacy of occurrence such as an immediate back injury following heavy lifting"); *Davis v. Workmen's Comp. Bd. of Appeal (United Parcel Serv.)*, 499 A.2d 703, 705 (Pa. Cmwlth. 1985) ("[T]here [could] be no doubt that unequivocal medical testimony [was] not required . . . to establish the relationship of [c]laimant's disability to his employment . . . where the claim [was] for a back injury which immediately manifest[ed] itself while [c]laimant [was] in the act of doing the kind

15

of heavy work which can cause such an injury"; thus, "medical opinion testimony [was] not required.").

Moreover, this Court has specifically held that a claimant's testimony regarding pain experienced immediately following a work incident may alone suffice to establish the requisite causal connection between the incident and an injury subsequently diagnosed as a disc herniation. *See, e.g.*, *Nw. Med. Ctr. v. Workers' Comp. Appeal Bd. (Cornmesser)*, 880 A.2d 753, 754-56 (Pa. Cmwlth. 2005) (testimony of claimant, a registered nurse, that he felt something pop in his back and experienced pain while moving a large patient at work established the requisite causal connection between the work incident and a work injury subsequently diagnosed as a herniated disc); *Workmen's Comp. Appeal Bd. v. Bethlehem Mines Corp.*, 349 A.2d 529, 530 (Pa. Cmwlth. 1975) (claimant's testimony alone sufficed to establish that being pinned against a plank at work while attempting to remove a piece of a steel chute weighing several hundred pounds caused a lower back injury in the form of disc herniations, where claimant immediately complained of back pain following the work incident); *Malecki v. Workers' Comp. Appeal Bd. (Franklin Reg'l Sch. Dist.)* (Pa. Cmwlth., No. 582 C.D. 2020, filed Mar. 26, 2021), slip op. at 1-3, 9-13 (reversing the Board's affirmance of the WCJ's determination that claimant failed to establish a work-related injury, reasoning that claimant's testimony that he experienced pain in his lower back and extending down the side of his left leg to his toes while lifting garbage into a dumpster established that claimant sustained a herniated disc as a result of the work incident); *City of Allentown v. Workers' Comp. Appeal Bd. (Porter)* (Pa. Cmwlth., No. 1038 C.D. 2011, filed Dec. 21, 2011), slip op. at 1-6 (claimant's injury in the form of a herniated lumbar disc and radiculitis was obviously work related, where claimant testified that

16

he immediately experienced pain after pulling his back while lifting a heavy tool onto a truck at work).[18]

Notably, the WCJ also credited Claimant's testimony that she had no prior diagnosis involving herniated cervical discs and that she had not previously experienced similar symptoms. *Cf. Sacks v. Workmen's Comp. Appeal Bd.*, 402 A.2d 293, 294 (Pa. Cmwlth. 1979) (citing *Morgan*) (factfinder did not require medical testimony to find the requisite causal connection where claimant, a school bus driver for handicapped children, experienced severe pain in his right knee and foot immediately after lifting a 17-year-old boy onto a bus, noting that claimant had no prior history of back trouble, the pain began as soon as he lifted the child and the incident was reported immediately).

We are unpersuaded by Employer's assertion that Claimant's purported delay in seeking medical care[19] and her ability to continue performing her regular job duties undermine her position. *See Odd Fellow's Home of Pa. v. Workmen's Comp. Appeal Bd. (Cook)*, 601 A.2d 465, 468-69 (Pa. Cmwlth. 1991) (noting employer's contention that claimant "continued to perform her duties without complaint for four months before seeking medical attention" and holding, in relevant part, that "[a]lthough [claimant's] [roughly four-month] delay in seeking medical care may have weakened the causal chain of events and raised the question of credibility, this did not preclude the referee from finding that [claimant] suffered a compensable injury," noting that "[t]he [WCJ] found [claimant] to be credible, and

---

[18] We cite these unreported opinions as persuasive authority pursuant to this Court's Internal Operating Procedures. *See* 210 Pa. Code § 69.414(a).

[19] We note Claimant's testimony that the work incident occurred sometime around 5:30 p.m. to 6:00 p.m. the evening of March 27, 2019 and that she sought medical attention the following morning. *See* F.F. 8; T.T., 11/26/19 at 13-14, R.R. at 40a-41a.

from her testimony determined that the requisite relationship existed to establish a work-related injury"); *Greene Cnty. Mem'l Hosp. v. Workmen's Comp. Appeal Bd. (Cole)*, 432 A.2d 1166, 1167 (Pa. Cmwlth. 1981) (affirming grant of workers' compensation benefits and holding that "unequivocal medical testimony [was] not required" where claimant "alleged that she injured her back while lifting and turning a very heavy patient," noting that while "[c]laimant continued to work for several weeks after the [work] incident, this [did] not preclude a finding that she suffered a compensable injury").

Moreover, here, the WCJ actually determined that "Claimant's credibility [was] further bolstered by the fact that Claimant [] continued to work despite her injuries." F.F. 8; *see also Davis v. Workers' Comp. Appeal Bd. (City of Phila.)*, 753 A.2d 905, 909 (Pa Cmwlth. 2000) ("In workers' compensation cases, the WCJ is the ultimate fact-finder who must determine witness credibility and evidentiary weight. . . . The WCJ's assessment of witness credibility is not subject to our review on appeal."). We, therefore, agree with the Board that Claimant's credible testimony concerning the pain and sensations she experienced immediately following the March 27, 2019 work incident sufficed to establish the causal relation between Claimant's injury in the form of C4-C5 and C5-C6 disc herniations and the work incident. *See, e.g.*, *Giant Eagle, Inc.*, 725 A.2d at 876; *Morgan*, 397 A.2d at 415-16.[20]

---

[20] Like the Board, we acknowledge Employer's observation that neither Dr. Strom nor Dr. Agarwal specifically opined that the March 27, 2019 work incident was the cause of Claimant's C4-C5 and C5-C6 disc herniations, and that Dr. Strom's report does not reference any work-related injury. *See* Board's Opinion and Order, 3/30/21 at 7 and 7 n.2, R.R. at 114a. Employer also points out that Dr. Strom's diagnosis did not include a C4-C5 disc herniation. However, the WCJ found that "both Doctors [Strom and Agarwal] agree[d] that Claimant's work-related injury was the cause of her complaints," specifically describing Claimant's compensable work-related injury

18

Employer asserts the following in its appellate brief:

> Dr. Agarwal confirm[ed] that the MRI of April 16, 2019 reveals disc osteophyte complex at C4-[C]5 centered to the left causing moderate left neuroforaminal narrowing. He also confirmed that at C5-[C]6 there is moderate to severe central canal narrowing secondary to disc osteophyte complex and bilateral neuroforaminal narrowing. Dr. Agarwal [did] not specifically relate these findings to any work injury of March 27, 2019. [] Claimant's testimony, in the absence of any unequivocal expert medical opinion evidence, cannot support [a] causal relationship between the March 27, 2019 event and the development of disc herniations and osteophyte complexes at C4-[C]5 and C5-[C]6.

Employer's Br. at 29. Employer further contends that "[d]isc herniations are not obvious injuries and can be present in the absence of any injury or trauma." *Id.* at 30. Nowhere in its appellate brief, however, does Employer specifically assert that any preexisting condition caused Claimant's injury in the form of disc herniations at C4-C5 and C5-C6 prior to the March 27, 2019 work incident, or that Claimant's injury resulted from the aggravation of any preexisting condition.[21] Further, we note

stemming from the March 27, 2019 work incident as "disc herniations at C4-[C]5 and C5-[C]6[.]" *See* F.F. 12; C.L. 3. To the extent the WCJ's findings may be inconsistent with the medical reports submitted by Dr. Strom and Dr. Agarwal, we note that any such discrepancy constitutes harmless error in light of our disposition of this matter. *See Sacks v. Workmen's Comp. Appeal Bd. (Sacks)*, 402 A.2d 293, 294 (Pa. Cmwlth. 1979) (citing *Morgan*) (affirming award of benefits even though claimant failed to present unequivocal medical testimony because "neither physician expressed any opinion on the relationship, if any, between claimant's disability and the [work incident] incident," where "claimant's disability [was] immediately and directly the result of [the] work incident").

[21] We note that even if Employer had asserted that Claimant's disc herniations resulted from the aggravation of a preexisting condition, Employer has cited no authority for its implicit argument that a claimant's testimony alone cannot establish that a work incident caused "aggravation symptoms" where the causal connection is obvious. *Cf. Knapp v. Workmen's Comp. Appeal Bd. (GTE)*, 671 A.2d 258, 262 (Pa. Cmwlth. 1996) ("Of course, *where there is no obvious*

19

that the WCJ credited Claimant's testimony regarding her medical history, specifically finding that "Claimant had never been diagnosed with a herniated cervical disc prior to her work-related injury and never previously experienced similar symptoms." F.F. 8. Even though Dr. Agarwal noted that Claimant's April 16, 2019 MRI revealed a disc osteophyte complex causing neural foraminal narrowing at C4-C5 and C5-C6 of the cervical spine, the WCJ also credited Claimant's testimony that she did not treat with Dr. Grasso for "neck complaints" prior to the work incident and that despite experiencing some muscle pain in the back of her neck after falling down a set of steps in 2009, that pain resolved in about 10 days. *See* F.F. 8 & 10; Dr. Agarwal Report at 2, R.R. at 81a. Further, the WCJ credited Claimant's testimony that she completely recovered within six weeks from her January 31, 2019 carpal tunnel surgery. *See* F.F. 8.[22] These credibility determinations and factual findings are binding on this Court. *See A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*, 78 A.3d 1233, 1238, 1243 (Pa. Cmwlth.

---

*causal connection* between the aggravation symptoms and the alleged work-related cause, that connection must be established by unequivocal medical evidence.") (emphasis added); *Somerset Welding & Steel v. Workmen's Comp. Appeal Bd. (Lee)*, 650 A.2d 114, 117 (Pa. Cmwlth. 1994) ("In light of his previous back pain, *an obvious causal connection does not exist* between [c]laimant's work-related incident and his injury.") (emphasis added).

[22] As summarized by Dr. Auerbach, a February 8, 2019 clinical note from Dr. Kolessar indicates that Claimant was pain-free following the January 31, 2019 carpal tunnel release. *See* Dr. Auerbach Addendum at 1, R.R. at 93a. Although Dr. Auerbach's summary of Dr. Kolessar's clinical note further indicates that Claimant experienced "[m]inor numbness in the fingertips," this complaint presumably resolved by the time of the March 27, 2019 work incident, as the WCJ credited Claimant's testimony that she achieved full recovery within six weeks of the carpal tunnel surgery. *See* F.F. 8.

2013) ("Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal.").[23]

Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[23] We acknowledge that "the causal link is not obvious if a claimant has a pre-existing condition related to the same body part the claimant alleges was injured at work." *Moyer v. Workers' Comp. Appeal Bd. (Pocono Mountain Sch. Dist.)*, 976 A.2d 597, 599 (Pa. Cmwlth. 2009). However, contrary to the present matter, *Moyer* involved a "work-related aggravation of a pre-existing back problem" for which claimant had treated prior to the work incident, where the work incident resulted in an increase in Claimant's existing back pain. *Id.* at 598-601. Here, the WCJ found that "Claimant had never been diagnosed with a herniated cervical disc prior to her work-related injury" and that she "never previously experienced similar symptoms." F.F. 8.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Geisinger Wyoming Valley
Medical Center,
                Petitioner

        v.

Colleen Drozda (Workers'
Compensation Appeal Board),     :   No. 427 C.D. 2021
                Respondent

O R D E R

AND NOW, this 28th day of February, 2022, the March 30, 2021 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge