## ALBERT EINSTEIN HEALTHCARE, Petitioner

v.

## WORKERS' COMPENSATION APPEAL BOARD (STANFORD), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 4, 2008.

Decided Aug. 4, 2008.

Christine Z. Papa, Philadelphia, for petitioner.

Thomas More Holland, Philadelphia, for respondent.

BEFORE: LEADBETTER, President Judge, COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Albert Einstein Healthcare (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) grant of the Claim Petition, but modified the start date of the disability by making it earlier than was found by the WCJ. The primary issue before this Court on appeal is whether the Board erred as a matter of law in modifying the WCJ's Decision by relying on Claimant's testimony in place of expert testimony.

Cynthia Stanford (Claimant) was employed as a full-time psychiatric assistant by Employer. Claimant had been employed with Employer for over four years, earning approximately $715.00 per week, at a rate of $14.35 per hour, plus time and a half for overtime.

On December 19, 2002, Claimant filed a Claim Petition. In her Claim Petition, Claimant averred that she sustained a work-related injury on July 2, 2002, in particular "[d]iscogenic discs" (Claim Petition ¶ 1), "when an elevator that [she] was on, suddenly dropped and jerked, tossing claimant about the cabin." (Claim Petition ¶ 4.) Claimant further averred that "[t]he injury was exasperated[sic][, in August,] when claimant was forced to physically restrain a patient with a blanket for a period of 2.5 hours." (Claim Petition ¶ 4.) Employer filed an answer denying Claimant's averments. The matter was scheduled for hearings.

At the hearings, Claimant testified on her own behalf. She also produced the deposition testimony of Richard H. Kaplan, M.D., as well as several items of documentary evidence. In opposition to the Claim Petition, Employer produced the deposition testimony of Richard J. Levenberg, M.D., as well as several items of documentary evidence.

As part of Claimant's testimony, she detailed the circumstances surrounding the two work-related injuries and indicated that she continued to work after the August injury, but that she eventually called

off of work on October 21, 2002. (WCJ Hr'g Tr. at 10, November 18, 2003.) Claimant testified that she visited her treating physician, Irwin Jacobson, M.D., on October 24, 2002. (WCJ Hr'g Tr. at 12.) Although Claimant did not present the testimony of Dr. Jacobson, she testified that Dr. Jacobson told her that she "needed to get some rest." (WCJ Hr'g Tr. at 12–13.) Consequently, Claimant testified that she called off work until November 2, 2002. (WCJ Hr'g Tr. at 13.) Claimant testified that she returned to work on November 2, 2002, but had to leave work early on November 4, 2002, because of continued pain that she was experiencing. (WCJ Hr'g Tr. at 11.) Claimant's Claim Petition indicates that her injury caused her to stop working as of November 4, 2002. (Claim Petition ¶ 9.)

Claimant also presented the deposition testimony of Dr. Kaplan, who is board certified in physical medicine and rehabilitation. Dr. Kaplan began treating the Claimant on *December 17, 2003*, and continued treating her through April 19, 2004. (Kaplan Dep. at 11.) Dr. Kaplan opined that the August 28, 2002 work-related incident aggravated Claimant's degenerative joint disease and caused acute, chronic, ongoing lumbosacral radiculopathy. (Kaplan Dep. at 19, 24.) As a result, Dr. Kaplan testified that Claimant "has not been able to work at a normal position *at any time that she's been under his care.*" (Kaplan Dep. at 27 (emphasis added).) [1]

The WCJ granted the Claim Petition and concluded that "Claimant met her burden of proving she sustained a work injury on August 28, 2002 in the nature of lumbosacral radiculopathy secondary to aggravation of underlying degenerative disc/joint disease." (WCJ Decision, Conclusions of Law (COL) ¶ 2.) The WCJ found Dr. Kaplan's testimony to be credible, as well as Claimant's testimony regarding her symptoms. (FOF ¶¶ 8–9.) The WCJ also rejected the testimony of Employer's expert,

---

1. There, arguably, appears to be a degree of ambiguity in Dr. Kaplan's testimony in that Dr. Kaplan references Claimant's treatment "under his care." The relevant questioning and testimony follows:

   > [Claimant's Counsel]: Now, you read [Claimant's] testimony regarding her job duties or her pre-injury job, right?
   > [Kaplan]: Yes.
   > [Claimant's Counsel]: And she also told you that in your office notes and you had that report in your file?
   > [Kaplan]: Yes.
   > [Claimant's Counsel]: Now, assuming that as a background, do you have an opinion within a reasonable degree of medical certainty as to whether [Claimant] has been physically capable of doing that position through the present?
   > [Kaplan]: She has not been—I have an opinion.
   > [Claimant's Counsel]: And what is that opinion?
   > [Kaplan]: She has not been able to work at a normal position at anytime that she's been under his care.

   (Kaplan Dep. at 27.) While the statement "under his care," when read by itself, seems to be referencing another doctor, review of the testimony in context does not clearly suggest that any other doctor is being referenced. Rather, it is more suggestive that Dr. Kaplan was using "under his care" to refer to himself in the third person. The arguments of the parties support a similar conclusion. Claimant, herself, does not contend that Dr. Kaplan's testimony should be read by itself to support a conclusion that she was disabled any earlier than the time he began treating her. Rather, her sole reference to Dr. Kaplan in the argument portion of her brief is that "Claimant's credible testimony coupled with that of Dr. Kaplan established that Claimant's work injury rendered her totally disabled beginning October 21, 2002." (Claimant's Br. at 7.) The WCJ treated this testimony as Dr. Kaplan stating that she was disabled from the time that he treated her. This is a fair reading of the testimony and, as neither party specifically calls the WCJ's reading of this testimony into question, we rely on the fact finder's determination as to the meaning of this testimony.

Dr. Levenberg, finding it to be not credible. (FOF ¶ 10.) The WCJ held that "Claimant [only] met her burden of proving she was disabled from her pre-injury position as a result of the August 28, 2002 work injury beginning December 17, 2003 onward." (COL ¶ 3.) The WCJ reasoned:

While Claimant testified [that] she could not perform her pre-injury position beginning October 22, 2002, and this testimony was found credible, she presented no medical evidence that she was disabled prior to December 17, 2003. Dr. Kaplan testified that Claimant was disabled during his treatment of her. There is no obvious causal connection between Claimant's injury and resulting disability, and without medical evidence of disability prior to December 17, 2003, this Judge cannot award benefits prior to December 17, 2003.

(COL ¶ 3.) The WCJ also found that "Claimant returned to work on or about November 1, 2004 with a loss in earnings." (FOF ¶ 15.) Based on these findings and conclusions of law, the WCJ awarded wage loss benefits beginning December 17, 2003. Additionally, the WCJ modified the award to partial disability as of November 1, 2004.

The Board affirmed the WCJ's decision granting the Claim Petition. However, the Board modified the WCJ's Decision to reflect that Claimant's work injury rendered her totally disabled from October 21, 2002 based on Claimant's credible testimony coupled with that of Dr. Kaplan. The Board reasoned that, "Dr. Kaplan's testimony established the causal relationship between Claimant's injury, employment, and disability." (Board Dec. at 4.) Accordingly, the Board modified the Decision and

Order to reflect that Claimant was entitled to total disability benefits from October 21, 2002 to December 17, 2003. Employer now appeals to this Court.

■■■ The primary issue before this Court on appeal is whether the Board erred as a matter of law in modifying the WCJ's Decision to reflect that Claimant is entitled to temporary, total disability benefits from October 21, 2002 to November 1, 2004.[2] We must, therefore, determine whether the Board erred as a matter of law in modifying the WCJ's Decision by relying on Claimant's testimony in place of expert testimony.

■■■ In a claim petition, the claimant has the burden of establishing a right to compensation and proving all elements necessary to support an award of benefits. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 141, 634 A.2d 592, 595 (1993). In particular, the claimant must establish that she "sustained a work related injury but also that such injury resulted in a disability, in the technical sense, as used within the Workers' Compensation arena, i.e., a loss of earnings or a loss of earning power." *School District of Philadelphia v. Workers' Compensation Appeal Board (Lanier)*, 727 A.2d 1171, 1172 (Pa.Cmwlth.1999). "The claimant is also required to establish the length of her [work related] disability." *Coyne v. Workers' Compensation Appeal Board (Villanova Univ. and PMA Group)*, 942 A.2d 939, 945 (Pa.Cmwlth.2008).

Employer contends that, under *Ricks v. Workers' Compensation Appeal Board (Parkway Corp.)*, 704 A.2d 716 (Pa. Cmwlth.1997), the WCJ, as the finder of fact, correctly weighed the testimony of

---

2. This Court's scope of review is to determine if constitutional rights have been violated, an error of law has been made, or necessary findings of fact are not supported by substantial evidence. *Peters Twp. Sch. Dist. v. Workers' Compensation Appeal Board (Anthony)*, 945 A.2d 805, 810 n. 8 (Pa.Cmwlth.2008).

Dr. Kaplan and Claimant and made a factual determination as to the chronological length of disability. Employer also notes that Dr. Kaplan's testimony only addressed Claimant's disability from the time he started treating her and, thus, the WCJ appropriately found disability only from the time of treatment on. Employer argues that, because the WCJ made findings of fact and conclusions of law that were consistent with her reading of the evidence and appropriately applied the law, the Board had no basis for modifying that decision.

Claimant argues that, under *Ricks,* the WCJ was free to rely on "Claimant's uncontradicted testimony regarding her reasons for stopping work on October 24, 2002 coupled with the medical evidence of record" to find that disability benefits should have commenced from October 22, 2002. (Claimant's Br. at 12.) We find Employer's position more compelling.

In *Ricks,* this Court held that a WCJ has the authority to decide the chronological length of disability depending upon competent evidence presented at the hearing, including the claimant's testimony and that of the claimant's medical witnesses. *Ricks v. Workers' Compensation Appeal Board (Parkway Corp.),* 704 A.2d 716 (Pa. Cmwlth.1997). What constitutes competent evidence is dependent on the nature of the injury and the time frame in which the disability arises:

> a claimant must establish a causal connection between the disability and the work-related incident. What is required to establish this causal connection is dependent upon whether or not the injury is obvious in nature. An obvious injury is one "which immediately manifests itself while Claimant is in the act of doing the kind of heavy work which can cause such an injury." A classic example would be the laborer who grabs his back

in pain after lifting his shovel full with wet concrete. In such a case, the causal connection is so clear that a lay person can see the connection. Under those circumstances, the claimant's testimony is sufficient to connect the injury to the claimant's employment, and additional medical testimony is not required. Conversely, where there is no obvious causal connection between the disability and a work-related injury, unequivocal medical testimony is required to establish that causal connection.

*Calcara v. Workers' Compensation Appeal Board (St. Joseph Hospital),* 706 A.2d 1286, 1289 (Pa.Cmwlth.1998) (citations omitted). An injury that does not immediately manifest itself while a claimant is performing her job is not an obvious injury and, therefore, is one requiring expert testimony. *Id.* at 1289.

In the present case, the record indicates that Claimant seeks to establish disability from a point approximately two months after the work incident in which she had to restrain a patient. However, Claimant presented no expert testimony that she became disabled prior to the time she was under Dr. Kaplan's care. Despite the fact that Claimant treated with a medical doctor, Dr. Jacobson, two months after the August 2002 injury, the record does not contain Dr. Jacobson's medical records, or any testimony from that doctor establishing that Claimant was disabled during the period of his treatment of her. Dr. Kaplan, who did testify, opined that Claimant was injured in the August 2002 incident; however, he did not testify that Claimant's work-related injury disabled her prior to his treatment of her. The Board, in reaching its conclusion to modify the WCJ's order, erred by stating that Dr. Kaplan's testimony established a casual connection establishing October 22, 2002 as the date the disability began. Rather, Dr. Kaplan

found Claimant to be disabled while she was under his care, which began 14 months after the August 2002 injury. Accordingly, the WCJ found that her disability began on December 17, 2003, the date of Claimant's initial treatment with Dr. Kaplan. The WCJ correctly relied, in part, on Claimant's testimony to award compensation for the period of time beginning with, and following, this point in time.

In meeting her burden of proof, Claimant seeks to fill the evidentiary voids in her case created by the absence of requisite expert medical testimony with inferences drawn from her presented evidence. Claimant argues that "[t]he reasonable inference to be drawn from the record is that effective October 24, 2002, Dr. Jacobson disabled the Claimant from performing her pre-injury job." (Claimant's Br. at 7

(emphasis added).) She draws this inference from her testimony that, on October 24, 2002, Dr. Jacobson told her she "needed to get some rest." (WCJ Hr'g Tr. at 12–13.) However, hearsay problems aside,[3] a doctor's statement that a person needs to get rest is a broad statement that could encompass a good night's sleep (or less), or an extended period of convalescence. In the absence of a clear explanation from Dr. Jacobson, by means of his own testimony, or by other competent medical evidence, we can only speculate as to the meaning of this statement. See Calcara, 706 A.2d at 1289. Therefore, this Court cannot infer merely from Dr. Jacobson's statement that she "needed to get some rest," that Claimant's work-related injury was the cause of a disability that began on October 22, 2002.[4]

3. Claimant relies on Walker v. Unemployment Compensation Board of Review, 27 Pa. Cmwlth. 522, 367 A.2d 366 (1976), to argue that Employer failed to preserve an objection to her testimony regarding Dr. Jacobson's purported statement to her and that, by failing to do so, the statement must be given its natural probative effect. Under the Walker rule:

> (1) Hearsay evidence, [p]roperly objected to, is not competent evidence to support a finding of the Board[;] (2) Hearsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding of the Board, [i]f it is corroborated by any competent evidence in the record, but a finding of fact based [s]olely on hearsay will not stand.

Rox Coal Co. v. Workers' Compensation Appeal Board (Snizaski), 570 Pa. 60, 75, 807 A.2d 906, 915 (2002) (quoting Walker, 367 A.2d at 370). We note that Employer's counsel did, in fact, object to this testimony as "to what the doctor said." (WCJ Hr'g Tr. at 12–13.) Assuming, for argument's sake, that any objection to this hearsay testimony was not preserved, as discussed in the text, the natural probative effect of the statement is not even reasonably, that Claimant was disabled. Additionally, the Walker rule cannot be used to fill the gaps left by a party's failure to present competent expert testimony. Calcara v.

Workers' Compensation Appeal Board (St. Joseph Hospital), 706 A.2d 1286, 1289–1290 (Pa.Cmwlth.1998) (discussing Walker and holding that "the failure of employer's counsel to object to the hearsay evidence does not affect the Claimant's burden to present competent medical evidence" and that "Claimant needed to corroborate the out-of-court statement of [her doctor] with other competent medical evidence [or to depose her doctor] to adequately establish a causal connection between the injury and her employment").

4. Claimant also avers that Dr. Jacobson's medical records support that she was unable to return to work. However, as previously noted, these medical records were not offered into evidence. Claimant tries to circumvent this fact by noting that Dr. Levenberg reviewed Dr. Jacobson's records. (Claimant's Br. at 12 ("Jacobson's medical records, which Dr. Levenberg reviewed, corroborate" that she was unable to return to work.).) We note that this review by Dr. Levenberg is no substitute for the records themselves, particularly when the review is from a witness whose testimony the WCJ found to be not credible. Additionally, the sole credible expert witness, Dr. Kaplan, provides no indication in his deposition that he reviewed or relied on any records or materials from Dr. Jacobson in forming his own medical opinion.

The WCJ was correct that expert testimony was needed and that the credible testimony established that Claimant was disabled due to her injury as of the time she was under Dr. Kaplan's care, December 17, 2003. In accordance with *Ricks,* the WCJ acted fully within her discretion, and her decision is supported by the record. The Board erred in modifying the WCJ's award.

For these reasons, we reverse the Board's Order to the extent that it modified the start of Claimant's disability to October 21, 2002 from the WCJ's determination that the disability started on December 17, 2003. We affirm all other aspects of the Board's Order.

### ORDER

**NOW,** August 4, 2008, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby REVERSED in part, and AFFIRMED in part. The order is reversed insofar as it modified the portion of the Workers' Compensation Judge's order that Claimant's disability began on December 17, 2003. The order of the Workers' Compensation Appeal Board is affirmed in all other respects.

Claimant also argues that it can be reasonably inferred that Dr. Andrew Indrisso disabled her from performing her pre-injury job. (Claimant's Br. at 10.) Claimant had been treating with Dr. Indrisso prior to seeing Dr. Kaplan. In support of this argument she cites to a portion of Dr. Kaplan's deposition (Kaplan Dep. at 13) in which he is summarizing a letter he sent to Dr. Indrisso, that set forth the medical history that Claimant provided to Dr. Kaplan. Hearsay issues aside, there is nothing in this testimony to indicate that Dr. Indrisso had found Claimant disabled from work. Dr. Kaplan does indicate that he had reviewed portions of Dr. Indrisso's medical records, including a report from August 29th in which Dr. Indrisso diagnosed Claimant with "lumbar segmental dysfunction, pelvic segmental dysfunction and lumbosacral radiculitis." (Kaplan Dep. at 13.) However, nothing indicates that Dr. Indrisso found Claimant disabled from work. Claimant bore the burden of presenting evidence to support her claim. We find no error in the WCJ's conclusion as to the duration of the injury.