IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Express Employment Professionals/   :
Express Services, Inc. DBA,   :
               Petitioner   :
  :
             v.   :   No. 880 C.D. 2021
  :   Argued: November 14, 2022
Isaiah Caldero (Workers'   :
Compensation Appeal Board),   :
             Respondent   :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ELLEN CEISLER, Judge (P.)
            HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                   FILED: January 20, 2023

Express Employment Professionals/Express Services, Inc. DBA (Employer) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) to grant Isaiah Caldero's (Caldero) Claim Petition. The issue before this Court on appeal is whether the WCJ's finding Caldero met his burden of proving he experienced an ongoing disability throughout the pendency of the claim is supported by substantial evidence. Upon review, we affirm.

## I.     **Background and Procedural History**

Employer is a temporary employment agency. In early July 2017, Employer placed Caldero in a laborer position at Reeb Millwork, where his tasks included

lifting and carrying doors weighing between 30 and 220 pounds. WCJ Decision (WCJ Dec.) at 4. Four days into the job, on July 6, 2017, Caldero was pulling a long, heavy wooden door and felt a jerk in his upper back. *Id*. After continuing to work for two weeks to see if his pain would resolve, Caldero reported his injury to his supervisor on July 19, 2017 and stopped working. *Id*. The supervisor referred Caldero to St. Luke's Occupational Medicine (St. Luke's), where he received treatment and was placed on restrictive work duties. *Id*. On August 10, 2017, Employer issued a Notice of Temporary Compensation Payable, describing the injury as an upper back area strain or tear. Reproduced Record (R.R.) at 3. Caldero treated with St. Luke's until the end of October 2017, at which time he was discharged from treatment and released to full-duty work. WCJ Dec. at 4. Caldero did not feel capable of returning to work because he continued to experience pain and upper back problems. *Id*.

On November 19, 2019, Caldero filed his Claim Petition, asserting he sustained work-related injuries to his upper back that prevented him from returning to work.[1] R.R. at 8. Caldero sought payment of ongoing temporary total disability benefits beginning July 19, 2017, the last day he worked. Employer filed a timely answer denying the material allegations. *Id.* at 12. Thereafter, the WCJ held two hearings, at which Caldero testified and the parties presented the deposition testimony of their experts.

In his testimony, Caldero described his work as a laborer, the history of his work injuries and treatment, and how ongoing pain made him unable to work in his preinjury position. WCJ Dec. at 4-5. In particular, Caldero testified about his initial treatment by providers at St. Luke's and by a physical therapist, a 15-pound lifting

---

[1] Caldero also asserted he sustained lower back injuries, but the WCJ did not credit his evidence and found no work-related lower back injuries. Caldero did not appeal this determination.

restriction, and Employer's lack of light-duty work. *Id*. at 4. Caldero explained that despite a physician at St. Luke's releasing him to full-duty work in October 2017, he continued to experience pain and problems in his upper back, particularly when lifting, rendering him incapable of returning to his full-duty position. *Id*. Following his discharge from care, Caldero sought relief for his ongoing back pain by purchasing pain medication off the street. *Id*. Beginning in January 2018, Caldero received treatment for 13 months for both back pain and an addiction to pain medication. *Id*. Caldero began receiving additional treatment in May 2019, namely trigger point injections and chiropractic care for his upper back area. *Id*. at 5. Caldero ultimately treated with Bruce Grossinger, D.O, his current medical provider. *Id*. at 4-5.

Dr. Grossinger described his treatment of Caldero, his review of Caldero's medical records, his multiple physical examinations of Caldero, and the diagnostic tests he performed on Caldero, including an electromyography (EMG). *Id*. at 5-6. Based on this review and his examinations, Dr. Grossinger opined Caldero sustained injuries as a result of the July 2017 incident and was currently disabled. Dr. Grossinger further opined Caldero had been unable to perform his preinjury position since the date of the incident. *Id*. at 6. Dr. Grossinger acknowledged he did not begin treating Caldero until October 2019. *Id*. at 5-6. However, Dr. Grossinger explained he could opine to a reasonable degree of medical certainty Caldero had been unable to work since the July 2017 work incident. *Id*. at 6.

Employer offered the deposition testimony of Robert Mauthe, M.D., who performed an independent medical examination (IME) of Caldero on December 9, 2019, and Ge Ma, M.D., the physician at St. Luke's who released Caldero to return to full-duty work in October 2017. Dr. Mauthe testified regarding his examination

3

of Caldero and review of Caldero's medical records, including the results of Dr. Grossinger's EMGs, which, in his view, did not support Dr. Grossinger's diagnoses. *Id*. at 7. According to Dr. Mauthe, Caldero may have suffered a thoracic strain but had fully recovered, required no further medical treatment, and could return to his preinjury position without restrictions. *Id*. at 7-8. Dr. Ma testified about treating Caldero at St. Luke's for a strained "muscle and tendon of [the] back wall of [the] thorax," imposing restrictions on Caldero's work duties, and releasing Caldero to full-duty work. *Id*. at 8. On the last point, Dr. Ma indicated that on October 24, 2017, his examinations showed no abnormal findings and Caldero wanted to return to full-duty work. *Id*. at 9-10. Therefore, Dr. Ma discharged Caldero to full-duty work. Dr. Ma admitted Caldero had work restrictions up until his last appointment and Caldero had not met his physical therapy goals. *Id*. at 9. Dr. Ma also indicated his reports reflect Employer did not offer light or modified duty to accommodate work restrictions. *Id*. He also testified individuals with injuries like Caldero's could have good and bad days, and he never signed anything indicating Caldero had fully recovered from the work injury. *Id*. Dr. Ma did not complete an Affidavit of Return to Work and did not include an opinion of full recovery in his treatment records. *Id*. at 11.

Caldero testified in response to Dr. Ma's testimony. Caldero disagreed he advised Dr. Ma he wanted to return to full-duty work and was not in pain. *Id*. at 9-10. Caldero explained during his final appointment that Dr. Ma advised Caldero the 90 days of physical therapy was the best that could be done, there was nothing else they could do, and Caldero's "time was up." *Id*. Caldero indicated he was surprised to be released to full duty because he still experienced pain and, as of the date of his testimony, he still experienced pain five days of the week. *Id*.

4

The WCJ found Caldero credible as to his job duties, the occurrence of the injuries on July 6, 2017, his stopping work on July 19, 2017, and that he did not formally treat the work injuries between the end of October 2017 until January 2019, other than by taking pain medication. *Id*. at 10. The WCJ found "sufficient consistency in the record that Caldero has an ongoing upper back problem arising out of the work injury." *Id*. The WCJ credited Dr. Grossinger's testimony and diagnoses as to the thoracic spine area injuries, finding it competent and persuasive, and as establishing Caldero is disabled from his preinjury position. *Id*. at 11. According to the WCJ, while Dr. Grossinger "did not see Caldero until October 7, 2019[, he] did have the opportunity to take a history that was consistent with Caldero's testimony [and] he also reviewed post-work injury treatment records," which substantiated Dr. Grossinger's testimony. *Id*. The WCJ found Dr. Mauthe's deposition testimony unpersuasive, citing his financial bias. *Id*. The WCJ rejected Dr. Mauthe's testimony where it conflicted with Dr. Grossinger's. *Id*. The WCJ rejected Dr. Ma's testimony Caldero was fully recovered as of October 24, 2017, noting Dr. Ma's records did not reflect this finding, and Dr. Ma did not complete an Affidavit of Return to Work. *Id*. In addition, the WCJ found return to full-duty work did not mean full recovery. *Id*. Based on these credibility determinations, the WCJ concluded Caldero had met his burden of proving he sustained injuries "which disabled him beginning July 19, 2017, to the present." *Id*. at 12. Accordingly, the WCJ granted the Claim Petition and awarded medical and ongoing indemnity benefits to Caldero beginning July 20, 2017.

Employer appealed to the Board asserting the WCJ erred in awarding indemnity benefits beginning July 20, 2017, arguing Dr. Grossinger's testimony could not support a finding Caldero was disabled before Dr. Grossinger treated him

in October 2019. The Board disagreed with Employer, concluding the WCJ's findings were supported by substantial evidence. Board Opinion (Bd. Op.) at 6. The Board explained Employer "concedes that the evidence at most demonstrates Caldero was disabled during the time he was under Dr. Ma's care, from August 7, 2017 until October 24, 2017, as well as from October 7, 2019." *Id.* The Board held that in a claim petition a claimant must establish the length of the work-related disability and the WCJ is authorized to decide the length of disability based on the evidence before it, including testimony of a claimant and claimant's medical witnesses. *Id.* (citing *Ricks v. Workers' Comp. Appeal Bd. (Parkway Corp.)*, 704 A.2d 716, 719 (Pa. Cmwlth. 1997)). Here, the Board reasoned, the WCJ made a factual determination as to the chronological length of disability based not only on Caldero's testimony but also on Dr. Grossinger's testimony, which considered his examinations of Caldero, the medical records, and Caldero's complaints of pain. Bd. Op. at 6-7. The Board concluded the evidence showed Caldero was disabled beginning July 20, 2017. *Id.* at 7. The Board affirmed the decision and order of the WCJ by order dated July 23, 2021. (Board's Order). Board Chairman Alfonso Frioni, Jr. dissented, stating Caldero's evidence had "established two periods of disability, but not disability throughout" the pendency of the Claim Petition. Id. at 8. Employer now petitions this Court for review.[2]

## II.    **Discussion**

On appeal, Employer argues Caldero's evidence did not establish an ongoing disability from the time of injury to the present. Employer asserts Dr. Grossinger's testimony was speculative, *see Jones & Laughlin Steel Co. v. Workmen's Comp. Appeal Bd.*, 394 A.2d 1091 (Pa. Cmwlth. 1978); *Gateway Coal Co. v. Workmen's*

---

[2] Employer filed an application for supersedeas with this Court, which we denied by order dated December 1, 2021.

*Comp. Appeal Bd.*, 388 A.2d 1122 (Pa. Cmwlth. 1978). Employer also asserts Dr. Grossinger's testimony could not support a finding of disability before his treating Caldero, particularly where no medical evidence explained the work restrictions between Caldero's release to full-duty work in October 2017 and Dr. Grossinger's treatment two years later. Employer asserts its argument is supported by *Albert Einstein Healthcare v. Workers' Compensation Appeal Board (Stanford)*, 955 A.2d 478 (Pa. Cmwlth. 2008). In *Stanford*, this Court concluded the testimony of a treating physician could not support a period of disability beginning before the physician's involvement. Employer maintains Caldero's testimony, by itself, could not meet his burden of proof because he admitted to being released to full-duty work as of October 24, 2017, and not seeking treatment for 14 months. Employer acknowledges determining the chronological length of a disability is within a WCJ's authority, but asserts such finding must be supported by substantial evidence, and neither Dr. Grossinger's nor Caldero's testimony constitutes such evidence. Employer accepts, at most, the evidence establishes Caldero's disability for two distinct periods: (a) from August 7, 2017 through October 24, 2017, and (b) from October 7, 2019 and ongoing. Thus, Employer requests this Court modify the Board's Order affirming the award of ongoing indemnity benefits beginning on the date of the work injury to reflect the two periods of disability.

Caldero argues the WCJ's decision is supported by substantial evidence and the Board's Order should be affirmed. According to Caldero, Employer's argument that Dr. Grossinger's opinions were speculative is without merit, and the cases Employer relies upon for support are distinguishable. Caldero further asserts Employer's reliance on *Stanford* is misplaced because the expert in *Stanford* gave the first date of disability as being the first day of treatment and there was no earlier

date of disability in the record. In contrast, Caldero argues, Dr. Grossinger opined Caldero became disabled as of July 19, 2017, not the date of Dr. Grossinger's first examination. Caldero argues Dr. Grossinger's testimony, along with Caldero's, substantially supports the WCJ's findings. *See Ricks*, 704 A.2d at 719.

Employer responds by noting Caldero's arguments do not rebut the conclusion Dr. Grossinger's opinions cannot support starting Caldero's indemnity benefits before he started treating Caldero. Employer contends Caldero's medical records do not support the length of disability the WCJ found, because while those records reference Caldero's pain complaints and treatment, they do not establish his inability to work. Employer contends *Ricks* is distinguishable because the claimant in that case testified of her attempts to return to full-duty work and her inability to do so, but Caldero offered no such testimony. Last, Employer argues Caldero's testimony alone is insufficient because he bore the burden of proving a disabling work injury by substantial medical evidence. *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs.)*, 126 A.3d 394, 402 (Pa. Cmwlth. 2015).

"Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Frankiewicz v. Workers' Comp. Appeal Bd. (Kinder Morgan, Inc.)*, 177 A.3d 991, 995 n.2 (Pa. Cmwlth. 2017). We exercise plenary, de novo review over questions of law. *Sedgwick Claims Mgmt. Servs., Inc. v. Bureau of Workers' Comp., Fee Rev. Hearing Off. (Piszel & Bucks Cnty. Pain Ctr.)*, 185 A.3d 429, 433 n.2 (Pa. Cmwlth. 2018). Questions of credibility, conflicting medical evidence, and evidentiary weight fall within the WCJ's authority, and the WCJ is free to accept the testimony of any witness,

8

including medical witnesses, in whole or in part. *Ingrassia*, 126 A.3d. at 399 n.5.

In a claim petition, a claimant has the burden of establishing a right to compensation and must prove all the elements necessary to support an award of benefits. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). To do so, the claimant must establish he "sustained a work related injury but also that such injury resulted in a disability, in the technical sense, as used within the Workers' Compensation arena, i.e., a loss of earnings or a loss of earning power." *Sch. Dist. of Phila. v. Workers' Comp. Appeal Bd. (Lanier)*, 727 A.2d 1171, 1172 (Pa. Cmwlth. 1999). The claimant also must establish the length of the work-related disability. *Stanford*, 955 A.2d at 481.

The nature of a claimant's injury and the timing of the disability determine what constitutes sufficient evidence to support an award of benefits.

> [A] claimant must establish a causal connection between the disability and the work-related incident. What is required to establish this causal connection is dependent upon whether or not the injury is obvious in nature. An obvious injury is one "which immediately manifests itself while [c]laimant is in the act of doing the kind of heavy work which can cause such an injury." A classic example would be the laborer who grabs his back in pain after lifting his shovel full [of] wet concrete. In such a case, the causal connection is so clear that a lay person can see the connection. Under those circumstances, the claimant's testimony is sufficient to connect the injury to the claimant's employment, and additional medical testimony is not required. Conversely, where there is no obvious causal connection between the disability and a work-related injury, unequivocal medical testimony is required to establish that causal connection.

*Calcara v. Workers' Comp. Appeal Bd. (St. Joseph Hosp.)*, 706 A.2d 1286, 1289 (Pa. Cmwlth. 1998) (citations omitted). If the injury does not immediately manifest itself while the claimant is performing his job, then the injury is not obvious and,

9

therefore, requires expert testimony to support the causal connection. *Stanford*, 955 A.2d at 482. Moreover, even if the work-related nature of an initial injury is obvious, the alleged ongoing disability may not be obvious and, in such cases, "there is a need for more than lay evidence, i.e., for medical evidence." *Cromie v. Workmen's Comp. Appeal Bd. (Anchor Hocking Corp)*, 600 A.2d 677, 679 (Pa. Cmwlth. 1991).

There is no dispute Caldero is entitled to indemnity benefits from (a) August 7, 2017, when providers at St. Luke's restricted Caldero's work duties,[3] to October 24, 2017, when Dr. Ma released Caldero to full-duty work, and (b) October 7, 2019 when Dr. Grossinger first examined Caldero, and ongoing. Rather, the question is whether Caldero presented substantial evidence to support the award of indemnity benefits for the time period between October 24, 2017 and October 7, 2019. Upon review, we conclude *Ricks* and *Ingrassia* support a determination Caldero met his burden of proving an ongoing disability through his and Dr. Grossinger's credited testimony.

In *Ricks*, we held a WCJ is free to determine the chronological length of a claimant's disability relying upon the evidence presented, which can include the testimony of the claimant and the claimant's medical witness. 704 A.2d at 719. There, the Court relied on both the treating physician's and the claimant's testimony to establish the chronological length of the claimant's disability.

In *Ingrassia*, this Court held a physician's lack of personal knowledge of a claimant's condition before the physician treated the claimant is not fatal to a medical opinion. 126 A.3d at 405. The court concluded a medical expert is permitted to base an opinion on the medical reports of other physicians, which experts customarily rely upon in the practice of their profession. *Id.* Thus, this Court

---

[3] Employer does not argue it offered, nor that Caldero refused, modified-duty work.

held that the physician's testimony was competent and, if believed, could support a finding of disability before the physician's first examination. *Id.* at 405 n.19.

Here, Dr. Grossinger reviewed Caldero's medical records, including those from St. Luke's imposing work restrictions on Caldero through October 24, 2017. Dr. Grossinger also reviewed the records indicating Caldero received treatment for upper back pain caused by the work-related injuries between his discharge from St. Luke's and beginning treatment with him. While no work restrictions appear in the medical records between October 24, 2017 and October 7, 2019, those records nonetheless indicate Caldero continued to experience chronic pain from his injuries. Caldero testified he experienced pain in his upper back throughout this period for which he sought treatment beginning in January 2018, *see* WCJ Dec. at 4-5, 10, not the 14-month gap in treatment Employer alleges occurred. Further, Dr. Grossinger's opinion of when Caldero became disabled by the work injuries was based not only on his review of Caldero's medical records but also on his understanding of traumatic back injuries typically being worse at the beginning and improving over time. Dr. Grossinger deduced if Caldero was unable to perform his preinjury position on October 7, 2019, Caldero was unable to perform those duties before then as well. Accordingly, pursuant to *Ingrassia*, if the WCJ found it credible, the testimony of Dr. Grossinger "coupled with [Caldero's] credible testimony, could support an award for some period of disability." 126 A.3d at 405 & n.19. Further, under *Ricks*, it was within the authority of the WCJ to determine the length of Caldero's disability based on the evidence of Caldero and his medical witness.

Contrary to Employer's assertion, *Stanford* does not support Employer's broad argument Caldero's evidence was insufficient to support the WCJ's findings. In *Stanford*, the claimant attempted to establish a period of disability from the date

of injury until beginning medical treatment solely on the claimant's own testimony. While the claimant had several treating physicians, the claimant did not offer any expert opinion or medical records from them, and the sole testifying expert did not indicate he had reviewed or relied upon any records in reaching his opinion. *Id.* at 483 & n.4. Thus, the WCJ concluded the claimant met her burden of proving disability started on the date her testifying expert provided, not the date she provided. This Court agreed, rejecting the claimant's broad reading of *Ricks* which would allow lay testimony by itself to establish disability in a non-obvious work injury. The Court explained the claimant could not "fill the evidentiary voids . . . created by the absence of requisite expert medical testimony with inferences drawn from her presented evidence." *Stanford*, 955 A.2d at 482-83. Unlike in *Stanford*, Dr. Grossinger testified he reviewed Caldero's medical records and opined Caldero had been and remained incapable of performing his preinjury work since the time of the incident or shortly thereafter. This expert testimony based on a review of the relevant medical records was absent in *Stanford*. Indeed, the Court in *Ingrassia* distinguished *Stanford* on this basis, noting unlike the expert in *Ingrassia*, the testifying medical expert in *Stanford* did not review the claimant's medical records or offer an opinion as to an earlier period of disability. *Ingrassia*, 126 A.3d at 405 n.17. Therefore, *Stanford* does not require the WCJ or the Board reject Dr. Grossinger's testimony nor that we reverse the Board's Order.

Similarly, *Gateway Coal* and *Jones & Laughlin Steel* do not require this Court to reverse the Board's Order. Employer relies on these cases to argue Dr. Grossinger's testimony was speculative and, therefore, not reliable. However, neither *Gateway Coal* nor *Jones & Laughlin Steel* held "speculative" evidence could not be relied upon, but rather, considered whether the evidence was of such apparent

12

trustworthiness that the referee[4] was required, as a matter of law, to give it more weight than any other evidence presented. In these cases, the issue was whether, in a weight of the evidence analysis, the referee capriciously disregarded evidence. We are not conducting a capricious disregard analysis in this matter, and, therefore, *Gateway Coal* and *Jones & Laughlin Steel* do not require this Court to reverse the Board's Order.

### III. Conclusion

For the foregoing reasons, we conclude the WCJ relied upon substantial evidence and the Board properly affirmed the WCJ's order. Accordingly, we affirm the Board's Order.

 

 

_____
STACY WALLACE, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[4] In 1993, our legislature amended Section 401 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 701, changing *referee* to *WCJ*. *See* Act of July 2, 1993, P.L. 190.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Express Employment Professionals/ :
Express Services, Inc. DBA, :
                     Petitioner :
                      :
              v. : No. 880 C.D. 2021
                      :
Isaiah Caldero (Workers' :
Compensation Appeal Board), :
                 Respondent :

# **O R D E R**

     **AND NOW**, this 20th day of January 2023, the July 23, 2021 order of the Workers' Compensation Appeal Board is **AFFIRMED**

                                _____

                                STACY WALLACE, Judge